IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD P. by and for | ) | No. 03-390 Erie |
| RACHEL P. AND DENISE L. by | ) | |
| and for KRISTINA L., | ) | |
| | ) | |
| Plaintiffs, | ) | Electronically Filed |
| | ) | |
| v. | ) | **Jury Trial Demanded** |
| | ) | |
| SCHOOL DISTRICT OF THE CITY | ) | |
| OF ERIE, PENNSYLVANIA; JANET | ) | |
| WOODS, individually and in | ) | |
| her capacity as Principal of | ) | |
| Strong Vincent High School; | ) | |
| LINDA L. CAPPABIANCA, | ) | |
| individually and in her | ) | |
| capacity as Assistant | ) | |
| Principal of Strong Vincent | ) | |
| High School, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**SECOND AMENDED COMPLAINT**</u>

<u>**Preliminary Statement**</u>

1. The Plaintiffs bring this action under Title IX of the Education Amendments of 1972, §901(a), *as amended*, 20 U.S.C. §1681, *et sequitur*; and Article I, §26 and §28 of the Pennsylvania Constitution.  They also assert claims under §504 of the Rehabilitation Act, 29 U.S.C. §794 and the Individuals With Disabilities Education Act, 20 U.S.C. §1415, by virtue of 42 U.S.C. §1983.  Plaintiffs, who are female minors, were victimized by severe and outrageous sexual harassment in the fall and winter of

2001 while they were students at Strong Vincent High School, located in Erie, Pennsylvania. The harassment culminated in their being victims of a violent and criminal sexual assault perpetrated by older students. Before and after the assault, Plaintiffs reported the peer to peer sexual harassment. The individual Defendants recklessly and intentionally violated state and federal law and did nothing to ensure that Plaintiffs would not be victims of sexual harassment. In fact, the individual Defendants eventually exacerbated the situation, by treating the Plaintiffs, who were 12 years old at the time, as if they were sexually promiscuous and willing participants in the violent sexual assault. Once the Plaintiffs' victimization became known throughout the school community, the Plaintiffs were treated to threats, taunts and teasing, and the Defendants did nothing to curtail this continued harassment. The assailants were not even removed from the school, and continued to be assigned to classes to which the Plaintiffs were assigned. Plaintiffs were excluded from continuing in the educational programs offered by the Erie School District and reassigned to an alternative education setting and suffered profound mental, emotional and educational injury as a result of the events which are the subject of this action.

## Jurisdiction

2. This court has jurisdiction by virtue of 28 U.S.C. §1331 as the claims raised by Plaintiffs arise under federal law. Plaintiffs also request this court assume supplemental jurisdiction over their state law claims by virtue of 28 U.S.C. §1367.

## Parties

3.  Richard P., the father of Rachel P., brings this action on her behalf.  Rachel P. is a resident of the Western District of Pennsylvania.  She is currently fifteen years old.  Her date of birth is November 16, 1988.  Denise L., the mother of  Kristina L., brings this action on behalf of Kristina L.  Kristina L. is a resident of the Western District of Pennsylvania, and her birth date is July 5, 1989.  She is currently fourteen years old.


4.  The Defendants are: the School District of the City of Erie, Pennsylvania ("Erie School District"), which is a public and governmental entity charged with providing public education to residents of the city of Erie; Janet Woods, who was Principal of the Strong Vincent High School at the time of the events giving rise to these actions; and Linda Cappabianca, who was Vice Principal of the school at the time of the events giving rise to this action.

3

5.   The Erie School District, Cappabianca, and Woods acted under color of state law with respect to the actions which are the subject of this Complaint.  Cappabianca and Woods were policymakers for the Erie School District insofar as they were the highest administrators assigned to Strong Vincent.  Cappabianca and Woods were also the administrators with the power and authority to curtail the sexual harassment from which the Plaintiffs suffered.

## Statement of the Facts

### General Statement Applicable to Both Plaintiffs

6.   Plaintiffs were twelve-year-old girls in 2001.  Rachel P. and Kristina L. enrolled at the Erie School District's Strong Vincent High School at the beginning of 2001 as seventh graders. They each had resided outside the Erie School District the year before.  Both Rachel P. and Kristina L. were special education students whose education was governed by an Individualized Education Program (IEP).

7.   Strong Vincent High School tolerated a high level of offensive sexual conduct among its students.

8.   Enrolled as a seventh grader, the Plaintiff Kristina  L. was sexually harassed by older students in the school throughout the fall of 2001. She reported the incidents to the Defendant

4

Cappabianca who ignored Kristina's concerns.  Cappabianca took no steps to stop the harassment directed at Kristina.

9.  Eventually, the unchecked sexual harassment culminated in a violent sexual assault on each of the Plaintiffs on November 27, 2001.  The assault was carried out by the older students who had been harassing Kristina L.

10.  Defendant Cappabianca was the school administrator responsible for discipline.  Kristina L. and Rachel P. immediately reported the assaults.  However, Cappabianca ignored the report of the violent sexual assault, as she had ignored the earlier reports of harassment.  She failed to report the assaults to appropriate criminal or child welfare authorities.  She also failed or refused to initiate school disciplinary policies and procedures that would have required an investigation and discipline of the offending students.  She even failed to remove the sexual predators from the Plaintiffs' classes.  The perpetrators of the assault were allowed to remain not only in the school but in the Plaintiffs' very classes, without any controls on their conduct or contacts with the Plaintiffs.

11.  After the rapes, Kristina L. and Rachel P. became the

victims of vicious taunting by male students, which were accompanied by additional threatened sexual assaults.

12.  Knowing that the assault had occurred, Vice Principal Cappabianca and Principal Janet Woods in turn victimized the Plaintiffs by suggesting, or insinuating, that they were at fault for the sexual assault.

13.  On at least two occasions in December 2001, Rachel P. only narrowly avoided further sexual assaults in the school building by the same group of aggressors.  The Erie School District's failure to take remedial steps encouraged other students to join in the harassment of the Plaintiffs.

14.  Eventually, criminal charges were filed against the individuals who perpetrated and organized the sexual assault.  The males who had assaulted Rachel P. and Kristina L. were convicted of delinquency in juvenile court proceedings and the female who had organized the activity was convicted, as well.  Upon information and belief, the School District was aware that one of the boys who was involved with assaulting Plaintiffs had a prior history of sexual molestation of young girls.

15. Each of the Plaintiffs was severely psychologically damaged by the conduct not only of the aggressors but of school

officials as well.  The girls were forced to withdraw from Strong Vincent and were placed in residential treatment centers for disturbed juveniles.  Their educational progress has been significantly and, in all likelihood, permanently disrupted.

## Particularized Facts Applicable to the Plaintiffs

### Kristina L. v All Defendants

16.  Kristina L. is currently 14 years old.  Her date of birth is July 5, 1989.  Kristina moved to Erie, Pennsylvania, from Meadville, Pennsylvania, as she was beginning seventh grade. Kristina was enrolled in Strong Vincent High School in Erie at the beginning of the 2001-2002 school year. Because of language problems and borderline normal intelligence, she was placed in the Learning Support program.

17.  Almost immediately upon enrollment, Kristina, then 12 years old, a petite, pretty, and slow-learning girl, became the prey for a group of predatory older students who bullied her.  At first they called her stupid and retarded, then escalated by saying sexually aggressive things to her. Kristina followed school instructions by reporting the harassment to Assistant Principal Linda L. Cappabianca as well as to various teachers.  Kristina was told to "suck it up" and ignore her harassers. Kristina's mother also talked to the Defendant Cappabianca, to no avail.

7

18. Kristina continued to bring the increasingly frightening behavior to the attention of teachers and administrators, but her complaints were routinely disregarded. For example, Kristina told the Principal, Mrs. Woods, the Assistant Principal, Ms. Cappabianca, and a teacher, Ms. Scully, that an older student, Charles B., had threatened to take her into the bathroom and force her to perform oral sex on him. When Kristina became increasingly emotional about the harassment, the response of the teachers and administrators was to criticize her for complaining.

19. The students who were harassing Kristina -- Charles B., Anthony K., and Becky C. -- were also in Kristina's classes. Kristina became so frightened of the group that one day she hid in the restroom rather than encounter the students in her class. For this action, Ms. Cappabianca punished Kristina by placing her on after school detention ("P.A.S.S." (Program for After-School Suspension)) for one week. This punishment required Kristina to remain after school until 6:30 p.m.

20. On Tuesday, November 27, 2001, Kristina was serving the first day of her "P.A.S.S." discipline. For some reason, Kristina was released early from detention, with no notification given to her mother. Even though the school was responsible for the

8

"P.A.S.S." students until 6:30 p.m., there were no teachers or administrators posted outside the school to protect a student such as Kristina who was released early.

21.    While waiting for her mother, Kristina was grabbed by Charles B.  He pulled her into a corner behind the laundromat that was across the street from the school. He forced her head back and violently compelled her to engage in forced oral sex.

22.    Kristina got away from Charles B. and ran into the laundromat. Ordinarily there was an attendant at the laundromat and Kristina felt safe waiting there.  Unfortunately, on that day there was no attendant.  Instead, Becky C., another student who had been harassing Kristina, was there.  She hit Kristina in the head with an object and threatened to hurt Kristina if she told anyone about what Charles B. had done.  Again, Kristina ran away, this time to an area outside the school.  When Kristina's mother found her, Kristina was still hiding.  She did not tell her mother what had happened.

23.    The day after the attack, Kristina told one of her teachers and Ms. Cappabianca about the attack.  Ms. Cappabianca's response was that Kristina should not have engaged in this activity, that it was something done by people in love.  Ms.

Cappabianca failed to follow mandatory procedures for reporting abuse of a minor to appropriate juvenile authorities. She failed to initiate school discipline policy regarding assaults and sexual harassment. The perpetrators of the violent sexual assault were not removed from the school, the police and child welfare workers were not contacted, and no effort was made to separate Kristina from Charles B. and Becky C. Kristina was forced to sit in the classroom with her assailants on a daily basis.

24. When it became clear that school officials and teachers would not help her, and that Charles B. and Becky C. would be free to continue to victimize her, Kristina became very withdrawn and severely depressed. On January 4, 2002, she intentionally burned herself and was admitted to Millcreek Community Hospital. She finally told her mother, Denise L., about the rape and advised her of the knowledge of Ms. Cappabianca and her teachers. The next day Denise L. went to the school and confronted school officials with this information. Ms. Cappabianca and another school official admitted to knowing about the rape and told Mrs. Long that they were "dealing" with it.

25. The school counselor came to a meeting at the hospital and said Kristina was being removed from Strong Vincent because

other students were harassing her because of the rape. Kristina was then removed from the school and placed at Sarah A. Reed Children's Center, ostensibly for her safety. Following that placement she was enrolled in a different Erie public school. Her behavior became increasingly violent and suicidal and she is now in a residential treatment center, as a result of the conduct complained of herein. Kristina was driven from the Erie School District by the sexual harassment from which she suffered and can no longer attend public school in the Erie School District.

### Rachel P. v All Defendants

26. Rachel P. also was enrolled as a seventh grader in Strong Vincent High School in September of 2001. She and her family had recently moved to Erie from Arizona.

27. Rachel P. had become friends with Kristina L., and on November 27, 2001, when Denise L. could not find Kristina because Kristina had been released early and assaulted by other students, Rachel P. became involved in looking for Kristina L. Rachel P. stumbled upon the students who had sexually assaulted Kristina L., and became the second victim of a violent predatory sexual assault that night. The assault of Rachel P. included forced oral sex undertaken by two males, Charles B. and Anthony K. The sexual assault also occurred near the laundromat, across the street from

11

Strong Vincent High School.  The incident also involved a physical assault by the same female student, Becky C.  Rachel did not confide in her parents concerning the assault.

28.    Within days of the sexual assault, Rachel P. also advised Assistant Principal Cappabianca as well as a substitute teacher  of the incident. She reported to  Cappabianca that two males had forced her to engage in oral sex against her will, and that a female student had attacked her and threatened to attack her for resisting the sexual assault.

29.    Rachel began seeking Cappabianca's protection as she became the target of taunts and threats  from other students who learned  that  she  had  been  sexually  assaulted.    When  Rachel complained that students were taunting her, threatening her and harassing her over the incident, Cappabianca called Rachel P. a "filthy little girl" and told Rachel P. that she was aware of what Rachel P. was doing.

30.    Cappabianca, although empowered to discipline the students who assaulted Rachel P. and who were harassing  her on an ongoing  basis, did nothing.    Cappabianca, however, imposed an after-school detention on Rachel P., apparently for reporting the sexual attack which had victimized her.

31.   Several days later, Cappabianca telephoned Richard P. in
Rachel P.'s presence and referred to Rachel P. as a "dirty little
girl" and stated that Rachel had a "foul mouth" and advised Richard
P. to punish or discipline his daughter.  She told Richard P. that
Rachel P. was engaging in oral sex, without providing any other
information  to  illuminate  Rachel's  plight.   She  gave  him  no
information about the rape.

32.  Knowledge of the fact that Rachel P. and Kristina L. were
victims of rape quickly spread throughout the school.  The fact
that Rachel P., a 12-year-old, had been sexually assaulted became
known to most, if not all, of the students and upon information and
belief to most, if not all, of the faculty.  Rachel P. was shunned
by  female  students  and  sexually  harassed  by  male  students.
Throughout  the  month  of  December  2001,  students  at  the  Strong
Vincent High School ridiculed, taunted and teased Rachel P., and
repeatedly suggested, in lascivious and threatening fashion, that
Rachel P. engage  in  oral  sex.   Male  students  would  accost  her
demanding sex.

33.  Rachel P. continued to seek the help or protection of Ms.
Cappabianca on repeated occasions in December 2001.  She advised
Ms. Cappabianca of the unbearable harassment she was experiencing.

Ms. Cappabianca took no steps to end the harassment. Instead, Cappabianca once again referred to Rachel P. as a "filthy little girl who needs to grow up."

34. On at least two occasions in December, Rachel P. was cornered by groups of students in the school and threatened with an impending sexual assault. On one occasion, Rachel P. was forced into a stairwell where she was surrounded by students, while a young male began threatening an imminent sexual assault. As a teacher walked by the stairwell, Rachel seized the serendipitous opportunity to escape from the students. When she tried to explain what had happened to the teacher, Ms. Cappabianca, who was in the vicinity, intervened and told Rachel to go to class. On another occasion, a group of students cornered Rachel P. in a hallway. The students were sexually threatening and taunting Rachel in the plain view of Defendant Cappabianca. Cappabianca yanked Rachel P. from the students' presence but did nothing to discipline the students who were harassing Rachel P.

35. Cappabianca was aware of the rape incidents, by virtue of having been told by both Rachel P. and Kristina L. After Kristina L. attempted to injure herself in early January 2002, Cappabianca scheduled a meeting with Richard P. and Rachel P. At that meeting, Principal Woods used graphic vulgar language to describe Rachel's

conduct.  The discussion occurred in the presence of Rachel P. and her father.  Woods and other administrators advised Richard P. that the School District officials had been aware of the sexual assault but had done nothing about it.  A counselor informed Richard P. that oral sex was as common among students as shaking hands.  At this time, Woods told Richard P. that Rachel P. had to be removed from the school for her safety.  The boys who assaulted her were allowed to remain in the school.

36.  After this meeting, Richard P. confronted Cappabianca who acknowledged and admitted that she was aware of the assault but had done nothing to report it.

37.  Rachel P. was assigned to Sarah Reed in January 2002, which is a school for troubled children.  Following Rachel P.'s reassignment from Strong Vincent, Richard P. learned that Defendant Cappabianca was advising other parents to keep their children away from Rachel P. because of her purported sexual activity.

38.  During the course of the next several months, Rachel P. suffered severe and significant emotional distress, depression, anxiety, self-hatred, and self-loathing, and threatened suicide. She was involved in violent incidents with her parents and committed to a psychiatric hospital on several occasions.

39.  In the fall of 2002, Rachel P. was once again assigned to Strong Vincent High School.  On her first day there, she was subject to taunting, teasing and ridicule by the students and a police officer was called to escort her out of the school when she violently reacted to the sexual harassment.  Rachel P. has been excluded from the educational program offered by the Erie School District because of the sexual harassment which she endured.

### Causes of Action

### Count I

### Rachel P. and Kristina L. v Erie School District, Claim Under Title IX

40.  Title IX of the Education Act provides, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."  20 U.S.C. §1681(a).

41.  The Erie School District receives federal financial assistance.

42.  The Erie School District had elaborate disciplinary policies that related to sexual harassment and assaults, among other disciplinary issues.  However, the policies did not spell out

16

how a victim was to report the assault or harassment.  Kristina and
Rachel followed the sparse directions given to students regarding
reporting of problems, telling the Assistant Principal assigned to
seventh graders, Ms. Cappabianca.   There apparently was no
effective investigative procedure in place because Erie School
District officials did not undertake an investigation upon learning
of the sexual harassment or the assaults.

43.   The Erie School District had actual knowledge of the
circumstances of the rape and subsequent treatment of Rachel P. and
Kristina L. by teachers.   Cappabianca and Woods were aware that
Kristina L. and Rachel P. were victims of sexual harassment and the
violent sexual assault.   Knowledge of the rape and the sexual
taunting and teasing faced by Rachel P. and Kristina L. on a daily
basis had spread among the teachers, guidance counselors, and
students.   In the face of that knowledge, the administrators,
teachers and counselors who had the ability to alter the situation,
were deliberately indifferent to the harassment directed at Rachel
P. and Kristina L.  Consequently, the perpetrators were emboldened
by the discovery that their activities would not be curtailed or
punished.   In effect, school officials became sponsors of the
perpetrators' behavior.  The misconduct in this case occurred on
school property, during school time, and, in Kristina's case,
immediately after school.   The Defendants retained substantial

17

control over the conduct of the students who perpetrated the sexual harassment and assault.

44.   Rather than taking steps to immediately terminate the harassment and discrimination and devise ways that Kristina L. and Rachel P. would not be deprived of their right to education and their ability to enjoy a free and public education in an environment appropriate for them, the School District in fact turned the tables and treated Rachel P. and Kristina L. as if they were the sexual predators instead of the victims of a violent, degrading, and painful sexual assault, and the unbearable experience of taunting, shunning and sexual harassment that followed the assault.

45.   Rachel P. and Kristina L. have been excluded from the educational programs offered by the Erie School District because the sexual harassment  inflicted on them was so severe that they could not continue to bear the day-to-day trauma of being in school.

**Count II**

**Rachel P. and Kristina P. vs.
Cappabianca and Woods**

18

## Article I, §§26 and 28 Pennsylvania Constitution – Prohibition Against Discrimination Based on Gender

46.  Article I, §26 of the Pennsylvania Constitution outlaws discrimination by the Commonwealth or any political subdivision thereof.

47.  Article I, §28 of the Pennsylvania Constitution outlaws discrimination based on sex or gender.

48.  By virtue of having placed the Plaintiffs in harm's way, and by failing to protective the Plaintiffs from sexual assault, the Defendants abridged the Plaintiffs' rights under Article I, §§26 and 28 of the Pennsylvania Constitution.

## Count III

## Rachel P. vs. Linda Cappabianca

49.  After the incidents described in the Complaint, Linda Cappabianca had a meeting with a parent of a friend of Rachel P. The meeting occurred at Linda Cappabianca's instigation.

50.  In that meeting, Cappabianca said that "Rachel was 'giving head' to boys or performing 'blow jobs' in school.  She mentioned that this conduct was occurring in the gym, the basement,

the bathroom, and the cafeteria." While she was telling the parent this, Cappabianca made a sucking motion with her mouth to show Johnson what Rachel had been doing to boys. Ms. Cappabianca also told Johnson that Rachel had been caught doing these kinds of things in school. She also told Johnson that Cappabianca knew that Rachel was engaging in sexual conduct at the "smokers' corner" or the laundromat near the school.

51. These statements were not true.

52. There was no privilege to confide the information to the parent.

53. The statements were defamatory and suggested that Rachel P., a twelve-year-old girl, was sexually promiscuous, when, in fact, the opposite was the case, and she was a victim of a sexual assault. They were intended to ruin the reputation of Rachel and cause her to be held in contempt and low esteem by her peers and the community, because they were made in front of one of Rachel's friends.

54. Rachel P. suffered severe and significant injury as a result of the defamatory statement made by Cappabianca. Her reputation was injured.

20

55.  The statements constitute slander per se, since they impugn Rachel P.'s character and suggested that she was sexually promiscuous.

56.  WHEREFORE, Rachel P. requests this Court assume jurisdiction over this state law claim and enter judgment in her favor in an amount in excess of $10,000.00 for compensatory and punitive damages.

**Count IV**

**Plaintiffs v Erie School District**
**Claims under the Individuals with Disabilities**
**Education Act and Section 504 of the Rehabilitation Act**

57.  Plaintiffs each have been identified as needing special education and being entitled to such under the Individuals with Disabilities Education Act (IDEA).  Plaintiffs became disabled as that term is employed by Section 504 of the Rehabilitation Act, 29 U.S.C. Section 794 (Section 504), after they were sexually assaulted and harassed by other students.

58.  Prior to the events which are the subject of this case, each of the Plaintiffs had an IEP which identified certain areas of learning where they experienced deficiencies and directed that they be provided with special education in learning support classes.

21

59.  As a consequence of the violent sexual assault suffered by Plaintiffs, and the harassment which they suffered in the school, Plaintiffs developed a disability, post-traumatic stress disorder (PTSD).  This disability required treatment.  The condition impaired significant life activities.  KL engaged in self-destructive behavior and both had difficulty with everyday activities.

60.  After the Plaintiffs reported the sexual assault, the administration of the Erie School District decided that each of the Plaintiffs would have to be placed in a more restrictive educational setting, and be placed in a classroom which employed a behavior modification modality.

61.  The purpose of this placement was not related to valid and bonafide educational needs of the Plaintiffs, nor was it related to Plaintiffs' PTSD.  Rather the reassignment was intended, by the Defendants, to address moral, social, and behavioral shortcomings which the School District perceived to exist.

62.  Following the decision to reassign the Plaintiffs, the Defendants went through the motions of revising Plaintiffs' IEPs.  However, the IEP revision process did not include assessments,

evaluations, or discussions with the Plaintiffs' parents, teachers, or other professionals, nor did it adhere to the rules and procedures for changing educational placements.

63. The Defendants allowed Plaintiffs and their families no opportunity to participate in the process of revising Plaintiffs' IEPs. Documentation purportedly justifying the change was prepared by district-level administrators, as opposed to emanating from the IEP team at the school. The parents were not involved in the IEP process, and, in fact, executed the documentation approving changes at the request of a home-school visitor rather than an IEP team.

64. Administrators who orchestrated the IEP revisions spent no time involving the parents in a consideration of educational options. The parents were told that the change in the educational placement was necessary for the safety of their daughters. In other words, they were told that their daughters could not be kept in the regular Erie school system and that their only choice was to be placed in an alternative educational setting.

65. In essence, the Defendant Erie School District made a

mockery of the procedures mandated by the Individuals With Disabilities Education Act, 20 U.S.C. §1400 *et seq.* Furthermore, by basing its decision to remove the Plaintiffs from the Erie school system because the Plaintiffs were suffering from PTSD, and because Defendants perceived Plaintiffs as disabled, the Defendants discriminated against Plaintiffs in violation of §504 of the Rehabilitation Act, 29 U.S.C. §794.  The Erie School District reassigned the Plaintiffs to an out-of-school educational setting without the faintest comprehension of the educational needs of the Plaintiffs.

66.  Plaintiffs' parents were told that Plaintiffs educational placement had to be changed in order to provide safety to the Plaintiffs.  This also is discrimination prohibited by §504.

67.  Valid educational needs of the Plaintiffs, which had to be determined by the IEP team, were ignored.

68.  As a consequence of placing the Plaintiffs in a behavioral modification program, the Defendants inflicted significant and severe injury to Plaintiffs' education.  Plaintiffs were removed from a regular school setting where they were taught academic subjects and placed in a highly restrictive educational setting where the emphasis was on behavior.

69.    The behavior modification education plan which was imposed on the Plaintiffs was highly harmful to the Plaintiffs. As a consequence of being placed in this setting, the Plaintiffs were not afforded the types of treatment and therapy that they needed, including therapy for post-traumatic stress disorder.

70.    The Defendants' failure to adequately assess and evaluate the Plaintiffs' educational, social, and emotional needs resulted in the Plaintiffs' suffering further injury, including spiraling into juvenile delinquency.

71.    The Defendants fraudulently induced Plaintiffs' parents to consent to the placement by advising Plaintiffs' parents that the Plaintiffs could not be kept safe in the Erie schools. Given the fact that the Plaintiffs had been recently sexually assaulted by other Erie school students, and were being subjected to taunting by their peers and additional sexual assaults, Plaintiffs' parents had no realistic choice but to accede to the recommendations of the School District.

72.    Initially, the parents believed that the school's recommendations were made in good faith and meant to provide some remedy for the injuries the Plaintiffs suffered. However, it eventually became clear that the School District was not interested

in providing Plaintiffs with a bonafide educational placement.

73.  Neither of the Plaintiffs is now attending school in the Erie School District. The violations raised here are not amenable to exhaustion under the IDEA.  In fact, there was never a viable exhaustion remedy available, since the Plaintiffs were told that they could not be kept safe in a regular program provided by the Erie School District.

74.  The conduct described above violated Plaintiffs' rights under 42 U.S.C. §1982, 20 U.S.C. §1415 et seq and 29 U.S.C. §794. Plaintiffs request this court assume jurisdiction under these claims and provide appropriate relief.

## **Injuries**

75.  Kristina L. was subject to a violent sexual assault in spite of her repeated reports and efforts to secure relief from the sexually hostile educational environment to which she was subjected.  Kristina L. and Rachel P. were subject to a persistent, intense and severe period of ostracism, taunting, teasing, threatened physical assault and other conduct at the hands of their peers, which centered on their being victims of the sexual assault. This harassment caused both Rachel P. and Kristina L. to suffer

severe emotional distress and mental illness. Each was hospitalized on numerous occasions. Kristina L. attempted suicide and inflicted injuries upon herself. Rachel P. became withdrawn, violent, and spiraled into a period of self-loathing and engaged in self-destructive conduct. Each was denied educational opportunity and, in essence, deprived of the right to an education because of the conduct of the Defendants. The girls had to be separated from their families in order to receive residential therapeutic treatment.

## Relief

76. Rachel P. and Kristina L. request this court assume jurisdiction over this case and enter judgment in their favor against the Defendants in an amount which compensates them for the injuries they have sustained. They also seek punitive damages against the individual Defendants and counsel fees, costs of this action, and such other relief as is just and appropriate.

Respectfully submitted,


s/ Edward A. Olds
Edward A. Olds, Esquire
Pa. I.D. No. 23601
Carolyn Spicer Russ
Pa. I.D. No. 36232
Richard S. Matesic
Pa. I.D. No. 72211
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

James T. Marnen, Esquire
KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.
120 West Tenth Street
Erie, PA 16501-1461

S/ Edward A. Olds
Edward A. Olds, Esquire