IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD P. by and for ) | No. 03-390 Erie |
| RACHEL P. and DENISE L. by ) | |
| and for KRISTINA L., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Jury Trial Demanded** |
| ) | |
| SCHOOL DISTRICT OF THE CITY ) | Electronically Filed |
| OF ERIE, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION SEEKING CLARIFICATION OF
ORDER GRANTING PARTIAL SUMMARY JUDGMENT
AND
PLAINTIFFS' MOTION FOR
LEAVE TO REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO AMEND COMPLAINT

OR ALTERNATIVELY
MOTION FOR STAY TO PERMIT
EXHAUSTION OF ADMINISTRATIVE REMEDIES**

The Plaintiffs seek clarification of this Court's order concerning Defendants' summary judgment motion, relative to the Title IX ramifications of Plaintiffs' reassignment out of their regular public school setting.

.       The Plaintiffs also seek leave to reply to Defendants' opposition to Plaintiffs' motion to amend their complaint by adding a claim under the IDEA and Sec. 504 of the Rehabilitation Act.[1]

---

[1] The Defendants oppose the motion to amend, claiming that Plaintiffs should seek relief in the administrative process.

Alternatively, Plaintiffs seek a stay of these proceedings so that they may exhaust administrative remedies, if the Court decides that exhaustion is required.

**Background**

The Court recently disposed of Defendants' motion for partial summary judgment. The colloquy with the Court revealed apparent confusion on the legal significance of the Plaintiffs' reassignment out of their regular school setting, confusion which apparently arose because their reassignment is also the basis of Plaintiffs' pending motion to amend their complaint to add an IDEA and Sec. 504 claim.[2] That motion is scheduled for argument on Monday, November 14, 2005.

Plaintiffs assert that their reassignment out of their regular school to the Sarah A. Reed Children's Center ("Sarah Reed'), following sexual assaults by classmates and in-school sexual harassment related to the assaults, was a paradigmatic Title IX violation. It was an acknowledgment by the School District that it could not protect them from further sexual harassment if they stayed in the school, and it was a disciplinary action for what the School District perceived to be the Plaintiffs' sexually inappropriate behavior.

Plaintiffs seek clarification of the Court's ruling specifically with regard to the legal ramifications of the Plaintiffs' removal from the regular school setting. As it presently stands, the Court's ruling appears to say that because the Plaintiffs were special education students, their

---

[2]The Plaintiffs sought to amend the complaint in response to Defendants' argument in the motion for partial summary judgment that had the Plaintiffs included an IDEA claim, it would have to be denied for failure to exhaust administrative remedies.

exclusion from the regular classroom and the regular school would be actionable under the IDEA, not under Title IX.

Taken to its logical conclusion, this would mean that when the victims of a Title IX claim are also special education students, discrimination violative of Title IX cannot be pursued unless the students first exhaust administrative claims under the IDEA.

The Court indicated in its Order: "[T]he plaintiff concedes that to the extent ... that there is a viable claim rising out of the children's placement under IDEA, that would come via 1983. ... The present posture of the case is that there remains a viable Title IX claim for the student on student sexual harassment against the school district. ... And the court will take up [at] its earliest opportunity the motion to amend the complaint insofar as it relates to the placement." **(p. 24, Nov. 1, 2005)**

While the Plaintiffs indeed filed a motion to amend their complaint to assert claims under the IDEA and the Rehabilitation Act, they did not propose that that amendment would replace their contention that the reassignment violated their Title IX rights. The motion to amend is intended, rather, to supplement their Title IX claim.

The Court's holding, if left undisturbed, would permit recipients of federal funding to segregate victims of sexual harassment in highly restrictive alternative educational settings under the guise of protecting them from further harassment, or to discipline female students for engaging in sexual activity when male students are not so disciplined.

**The Applicable Legal Standard**

Title IX provides that "[n]o person... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). In **Franklin v. Guinnett County Public Schools**, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Supreme Court held that a claim for damages can be asserted under Title IX "in a case ..., in which intentional discrimination is alleged." See 503 U.S. at 74-75. In **Davis v. Monroe Education**, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), the Court held that Title IX is violated when "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." (at 526 U.S. at 633, 119 S.Ct. at 1666) In distinguishing actionable conduct from non-actionable, ordinary student teasing, the Davis Court gave a useful illustration:

> The most obvious example of student-on-student sexual harassment capable of triggering a damages claim would thus involve the overt, physical deprivation of access to school resources. Consider, for example, a case in which male students physically threaten their female peers every day, successfully preventing the female students from using a particular *360 school resource--an athletic field or a computer lab, for instance. District administrators are well aware of the daily ritual, yet they deliberately ignore requests for aid from the female students wishing to use the resource. The district's knowing refusal to take any action in response to such behavior would fly in the face of Title IX's core principles, and such deliberate indifference may appropriately be subject to claims for monetary damages. It is not necessary, however, to show physical exclusion to demonstrate that students have been deprived by the actions of another student or students of an educational opportunity on the basis of sex. Rather, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities.

526 U.S. at 650-51, 119 S.Ct. 1661 (emphasis added).  See **In KM Ex Rel DG v Hyde Park Central School District**, 381 F.2d 343, 360 (F.D.N.Y.) (The fact that Plaintiff had to eat lunch with a teacher to avoid harassment in the lunchroom is discrimination since "unnecessary social isolation has been considered a form of actionable discrimination." **Olmstead v. L.C.**, 527 U.S. 581, 600-01, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999) (finding that the "unjustified institutional isolation of persons with disabilities is a form of discrimination" because the dissimilar treatment inherent to institutionalization requires persons with disabilities to "relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice").

**Plaintiffs' exclusion from the regular school setting is actionable under Title IX when the School District determines that it cannot keep protect students from sexual assaults and sexual harassment.**

School District officials claimed to the victims' parents that their daughters were being excluded from the regular school because the district could not keep them safe. Chris Ruhl, who coordinated the student assistance program at the Plaintiffs' school but had no role in designing or implementing a special education program, told Denise L. that the School District had decided that KL "is going to be moved from Strong Vincent for her safety... that the other kids are picking on her and due to the incident... [and] the school needed time for it to blow over." **(17a)**

The matter was put to Denise L by Ruhl that "the kids need time to forget about it.  And if she went back to the school that there might be further, you know, taunting about what happened, stuff like that.  It would be better to give them a break." **(18a)**  Denise L. accepted Chris Ruhl's

opinion on this because "he is professional.... He said there was a lot of police and stuff coming into the school to talk to everybody, and it would also be easier if they are not there." **(18a)**

Richard P was given a similar explanation, by the principal, Janet Woods. She informed him that RP was being transferred to Sarah Reed for her safety. Referring to the assailants, Woods told him that "BC was ... just bad. She's a very bad kid. And she said CB has a long history of being bad too. And she said given the fact of what happened to her, she said, I think we need to remove her for her safety." **(20a)**

A conclusion that KL and RP can be excluded from regular schools because that is the only way the School District can stop future harassment is fundamentally at odds with the basic premise of Title IX. Recipients cannot exclude students from school activities based upon sex or gender or to prevent harassment. *Davis* held that if students were driven from school activities because of ongoing harassment, Title IX's prohibition against sexual harassment would be violated. Here, the School District, deciding that it could not prevent ongoing harassment, officially excluded Plaintiffs not just from school activities but from the entire school setting.

If the court precludes the Plaintiffs from pursuing their claim that their reassignment to Sarah Reed violated Title IX, it is holding, as a matter of law, that a school district can segregate victims of sexual harassment without being concerned about Title IX claims. This is certainly not consistent with Title IX law.

**Exclusion from the regular school setting is actionable under Title IX when it is based on stereotypical notions concerning sexual activity.**

There is considerable indication in the record that the School District was referring the Plaintiffs to the alternative education program at Sarah Reed as a way to deal with perceived behavior problems, both in the fact that the Plaintiffs were involved in sexual activity in the first place and then in the way the Plaintiffs handled the subsequent harassment.

The evidence reveals that Cappabianca held KL and RP culpable for the sexual activity which ensnared them, most egregiously in the undisputed evidence that Cappabianca told at least one parent, Robin J., that her daughter "was hanging around some girls that ... were doing things that were inappropriate ... and that they were giving blow jobs in school to boys. They were caught doing it in the gym, and ... a Laundromat or at a store on the corner that the girls were doing it at." **(15a)** This mother testified that Cappabianca identified RP as one of those students. **(15a)**

Cappabianca's warning to the parent could certainly be deemed to be evidence that she blamed the female victims of sexual assault for causing or being complicit in the assault, or evidence that she held girls to different sexual standards than boys. There is no evidence that she called in parents regarding the male assailants, advising them to keep their children away from the males because they were involved in sexual activity.[3]

---

[3]In fact, when Cappabianca questioned KL and CB regarding rumors of sexual activity, KL confirmed the rumors and CB denied them. Cappabianca chose to believe the boy, CB. **(30a-31a)**

7

The Alternative Education Program is a step in the progressive discipline system adopted by the School District for its students. **(2a)**[4] Sarah Reed is the alternative school setting for Erie School District elementary students grades one through eight who have presented behavioral problems in the regular classroom. **(26a)**   The parents of KL and RP were directed to provide written permission for their daughters to "be transferred to the Erie School District's Alternative Education Program." **(4a,5a)**

The nature of Sarah Reed's program supports the theory that the Plaintiffs were sent there because they were perceived to present behavioral problems in school arising out of their allegedly voluntary participation in sexual activity.  That the Sarah Reed setting is one for behaviorally disruptive students is confirmed by the literature distributed to parents upon their child's admission to the program.  The behavior modification program is described as one "designed to help students make positive choices and to learn self-control techniques so they can develop positive behavior at home, in school, and in the community. It is our intention to respond properly and effectively to disruptive and aggressive behavior." **(7a)** The types of behavior that are exhibited by children at Sarah Reed are "aggressive behavior, defiant behavior, not staying within the classroom." **(9a)** Sarah Reed considers a placement at its facility "one of the most restrictive placements. **(9a)**

In **Pfeiffer v. Marion Center Area School District**, 917 F.2d 779 (3d Cir. 1990), the Court held that a student's exclusion from the National Honor Society violated Title IX if the

---

[4]Assignment to an Alternative Education Program is the step which follows a ten-day out-of-school suspension and which precedes an expulsion.  **(2a-3a)** As defined by the code, the Alternative Education Program serves "as an intervention, the focus being on the development of pro-social behaviors." **(2a)**

decision was motivated by discriminatory treatment of female students who engaged in sexual activity. In **Pfeiffer**, the Court recognized that excluding a female from the National Honor Society because she was pregnant could state a violation of Title IX. If exclusion from the National Honor Society because of sexual activity violates Title IX, certainly the reassignment of middle school girls to an alternative education setting because they were victims of sexual assaults should be seen as unlawful discrimination. This is particularly the case since the male assailants were not even disciplined for their activity.

Thus, both the law and the facts support the Plaintiffs' assertion that their exclusion from the regular school setting was a violation of Title IX and should be analyzed as such.

### PLAINTIFFS' MOTION FOR LEAVE TO FILE A REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO AMEND

The Defendants' opposition to the Motion to Amend misses the crucial point of the Plaintiffs' claim concerning their transfer. Thus, the Plaintiffs' claim that the transfer to Sarah Reed caused Plaintiffs severe emotional damage is not addressed at all.

The issue is not whether Plaintiffs are entitled to compensatory education, as the Defendants assert in their opposition to Plaintiffs' Motion to Amend. It is whether Plaintiffs are entitled to damages as a result of their exclusion from the Erie School District and placement at Sarah Reed, an alternative education center for severely behaviorally disturbed children. As set forth in a letter dated August 3, 2005, to Edward Olds from psychologist Stephen Schachner, PhD, the Plaintiffs

> were sent to a partial hospitalization program, an alternative educational school, as if they were troublemakers in class... Two previously well-behaved students

> perceived they were being punished for being raped... The failure to treat or even offer appropriate treatment for post-traumatic stress disorder, anxiety, and depression, was apparent as the girls' lives spiraled downward into the abyss of teenage delinquency... The failure to properly diagnose and treat ...generated severe reactions which compounded the initial trauma of the assault. It is beyond a reasonable doubt that I view these girls' experience at Strong Vincent High School and at Sarah Reed Partial Hospitalization, an alternative educational program, as causative factors for their social, emotional and academic sufferings and failure.

**(See Supplemental Pretrial Statement, letter to Edward A. Olds dated August 3, 2005.)**

Apparently because the School District officials went through the motions of complying with the IEP process in transferring the Plaintiffs to Sarah Reed, they now suggest that Plaintiffs have no Title IX remedy as to the reassignment without first exhausting remedies under a totally different statute.

The Defendants argue that the placement of the Plaintiffs should not be subject to Title IX litigation unless there has been exhaustion under the IDEA. There is no requirement that plaintiffs who possess Title IX claims are relegated to exhaustion under statutory schemes before they can bring a Title IX case. For instance, in **North Haven Board of Education v Bell**, 456 US 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), the Court held that Title IX precluded employment discrimination by entities which received funding under various education programs. It concluded that employment discrimination comes within the prohibition of Title IX.[footnote omitted] **Id.** at 530, 1922 1923. This is an acknowledgment that victims of employment discrimination can use Title IX as a vehicle to remedy such discrimination without pursuing the exhaustion requirements which are a precondition to suit under Title VII (42 USC Section 2000(e)) See also, **Jackson v. Birmingham Board of Education**, ___ US ___, 125 S.Ct. 1497 (2005) (retaliation for opposing discrimination was actionable under Title IX). Once

10

again, there was no determination that resort to exhaustion of remedies under Title VII of the Civil Rights Act was required.

The import of these cases is that simply because a cause of action might exist under another statutory scheme that requires exhaustion does not mean the right to bring causes of action under Title IX, without exhausting any other administrative remedies, is required.

The Defendant's only argument against allowing the Plaintiffs to proceed with the part of their case pertaining to their exclusion from the regular school setting was that since they were special education students, they had to exhaust their objections to their exclusion under the IDEA. The Defendant cites no cases that say a victim of discrimination under Title IX, who also happens to be identified as needing special education, has no right to bring an action vindicating their Title IX rights until they exhaust their IDEA remedies.

In the end, Plaintiffs are only seeking damages for the injuries caused them by their exclusion frm the regular school setting and the reassignment to Sarah Reed. It would be futile to exhaust under such circumstances, because damages could not be awarded in administrative proceeding.

## MOTION FOR STAY OF PROCEEDINGS

In **Churchill v Star Enterprises**, 183 F.3d 184 (3d Cir. 1999), the Court was faced with the question of whether claims brought under the ADA were precluded as a result of a litigant having pursued to judgment claims under the Family Medical Leave Act. The problem had been that the claims under the ADA had to be exhausted, and the exhaustion of the claims had not been completed prior to the trial of the FMLA claim. The Court held that the ADA claims were precluded.

In dicta, however, the Court stated that had the case come to it in the posture of a plaintiff who had sought to stay FMLA case, while exhaustion of proceedings under the ADA was pursued, the Court would determine that a district court should grant a stay.

> We believe that district courts are likely to look favorably on applications for stays of FMLA proceedings while plaintiffs promptly pursue administrative remedies under Title VII and similar state laws and we urge them to do so.  **Id.** at 194

In the accompanying footnote, the Court noted that the case did not involve

> a situation in which a court denied a diligent plaintiff's application for a stay in an FMLA act and thus precluded her from asserting her various claims in a single case.  In those circumstances, we might reach a different result.  **Id.** at FN8

In the present case, Plaintiffs assert that they were excluded from the regular school setting based upon sexual stereotyping and based upon the School District's determination that it could not keep them safe from sexual harassment in the regular school setting, and that their exclusion violated Title IX. In the event that this Court holds that the Plaintiffs' reassignment must first be evaluated under the IDEA, Plaintiffs then assert a right to exhaust their rights under the IDEA.

Therefore, Plaintiffs seek the following:

(1) Clarification of the Court's Order of November 1, 2005, to permit Plaintiffs to seek damages under Title IX for their reassignment from their regular school setting to the Alternative Education Program at the Sarah A. Reed Children's Center, or, in the alternative, a Stay of Proceedings to permit the Plaintiffs to exhaust administrative remedies under the IDEA; and

(2) Leave to reply to Defendants' opposition to Plaintiffs' Motion to Amend Complaint.

Respectfully submitted,

s/ Edward A. Olds
Edward A. Olds, Esquire
Pa. I.D. No. 23601
Carolyn Spicer Russ
Pa. I.D. No. 36232
Richard S. Matesic
Pa. I.D. No. 72211

1007 Mount Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975
(412) 492-8971 (facsimile)
edolds@earthlink.net

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 10, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

James T. Marnen, Esquire
KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.
120 West Tenth Street
Erie, PA 16501-1461


S/ Edward A. Olds
Edward A. Olds, Esquire

14