REDACTED TRANSCRIPT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RICHARD P., by and for R.P.,
and DENISE L., by and for K.L.,
        Plaintiffs


        v.              CIVIL ACTION NO. 03-390 ERIE


SCHOOL DISTRICT OF THE CITY OF
ERIE, PENNSYLVANIA, et al.,
        Defendants



        JURY TRIAL - DAY NO. 5



        Proceedings held before the HONORABLE

        SEAN J. McLAUGHLIN, U.S. District Judge,

        in Judge's Chambers & Courtroom C,

        U.S. Courthouse, Erie, Pennsylvania, on

        Monday, January 30, 2006.



APPEARANCES:
        EDWARD A. OLDS, Esquire, and CAROLYN
        SPICER RUSS, Esquire, appearing on behalf of

the Plaintiffs.

JAMES T. MARNEN, Esquire, appearing on behalf of
the Defendants.

Ronald J. Bench, RMR - Official Court Reporter

2

1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 8:35 a.m., on

4    Monday, January 30, 2006, in Judge's Chambers.)

5

6          THE COURT:  First of all, let me, before we start

7    with the proposed final instructions, talk and invite comment

8    on the proposed supplemental jury instructions, which I read.

9    And which I'm willing to be disabused of, but I think it's

10   precisely contrary to my previous rulings.  I do not understand

11   those points.

12          MR. OLDS:  I see it's different in the instruction.

13   It's like this, your Honor.  The way I see it is the rape,

14  well, the two elements are have they suffered from severe or

15  pervasive harassment, and was the school district deliberately

16  indifferent.  It's like apples and oranges.  While you find and

17  I don't dispute the fact that the school district was not

18  deliberately indifferent so as to cause the rape, that would be

19  the oranges.  That doesn't mean that the rape itself wasn't

20  severe and pervasive harassment.  And so in this kind of case

21  you're going to always have sexual harassment occur before

22  knowledge.  And the school district isn't liable until the

23  event of the knowledge comes about.  But the harassment could

24  be severe and pervasive before the knowledge happens.  If I

25  could, for instance, let me --


                              3


1          THE COURT:  Let me read the pertinent part of your

2   requested charge which gave me pause.  You're talking about

3   severe, pervasive and objectively offensive elements, and

4   request the following language appear in that section of the

5   charge.  "For purposes of deciding this fact, you may consider

6   the rape of the plaintiffs which occurred at the laundromat

7   across the street from the school in December of 2001.  As I

8  will discuss below, you may not consider that rape in

9  connection with awarding damages to the plaintiffs." Okay. So

10  you were going to make another point, I cut you off?

11         MR. OLDS: If you look at your jury instructions

12  here --

13         THE COURT: What page are you on?

14         MR. OLDS: Page three. You could incorporate my

15  point on evaluating whether the harassment was severe, I think

16  the standard is, or pervasive, you may consider the plaintiffs,

17  the rape of the plaintiffs which occurred across the street

18  from the school district on December 19, 2001. However --

19         THE COURT: Fundamentally, I disagree. You have to

20  convince me -- we'll kill two birds with one stone. On point

21  two you say you may award such damages for injuries sustained

22  by the plaintiffs if you find that the defendant was

23  deliberately indifferent to the December, 2001 rape.

24         MR. OLDS: That's wrong.

25         THE COURT: Of course it's wrong.

4

1         MR. OLDS: But, judge, the question of severe or

2  pervasive is really different -- that's a separate element.

3       THE COURT:  But a necessary element to make out a

4  complete cause of action.

5       MR. OLDS:  Now, there could be, in this case there

6  could be a period of harassment that goes on before the school

7  district has knowledge of the harassment.  And what you're

8  saying is the jury can't consider any harassment in terms of

9  deciding whether we've proved the first element of the case,

10  severe or pervasive.  You're saying that the jury can't

11  consider any of that conduct that occurred before knowledge.

12  But I agree with you that they're not liable until they have

13  knowledge.  But the conduct that occurred before their

14  knowledge can become part of a pattern of severe or pervasive,

15  that's just for the purpose of establishing that first element.

16       THE COURT:  What do you say about that?

17       MR. MARNEN:  I agree with the court, that the ruling

18  is that it should not be considered, only the harassment that

19  occurred of which they're aware, that the school should be

20  considered in that regard.

21       MR. OLDS:  We're talking about only the first

22  element.

23       THE COURT:  My view of it is this.  The first

24  element I charge on -- one is that they were subjected to

25  harassment because of the intentional conduct of others.  The


5


1  second element -- severe, pervasive and objectively offensive.

2  Now, your point is the second element, the severity.

3        MR. OLDS:  Excuse me, this would be the third

4  element, it would be deliberate indifference.  So I'm saying

5  you then have, once the school district is, cannot be held

6  responsible for any harassment that occurred before actual

7  knowledge.  However, conduct that occurred before actual

8  knowledge can suffice or satisfy the first two elements.

9        THE COURT:  I disagree, that is fundamentally wrong.

10        MR. OLDS:  Judge, if you will be patient with me.

11  In any case, to repeat, in this case, there's going to be

12  harassment -- there has to be harassment that occurs --

13        THE COURT:  I think, just to take a hypothetical

14  case, if it is likely that at some point on the continuum of

15  "harassment", the quality of notice to the school district

16  becomes sufficient, so to make out a jury issue on deliberate

17  indifference.  I agree with you on that.

file:///A|/RICHDAY5.TXT

18          MR. OLDS:  To satisfy the first two elements with

19   the harassment was severe, I mean, the school district cannot

20   be deliberately indifferent until it knows that something has

21   happened.  And what you're saying in these instructions is that

22   the jury can't consider what has happened in terms of

23   establishing the first two elements.

24          THE COURT:  Let me ask you.  If what happened on

25   December 19th is not relevant on the issue of damages, if what

6

1   happened on December 19th is not relevant on the issue of

2   liability, how can it possibly be relevant on that other prong?

3          MR. OLDS:  Because -- well, because it happened.

4   Our argument is that Linda Cappabianca became aware of such

5   sexual activity the day after it happened.

6          THE COURT:  I misspoke, it is potentially relevant

7   on the issue of damages under a psychological eggshell theory

8   that I previously talked about.  But go ahead.

9          MR. OLDS:  Our theory is that Linda Cappabianca was

10   deliberately indifferent to this instance of severe and

11   pervasive sexual harassment, the rape.  She found out about it

12  the next day.

13       THE COURT:  There is value to the clarity of legal

14  thinking.  Because it tends to sharpen our discussion.  You

15  just said your theory is that Linda Cappabianca was

16  deliberately indifferent to the December rape.  That can't be

17  the theory because I took that theory out of the case.

18       MR. OLDS:  Here's why it's true.  Because when she

19  found out from K.L. and C.B. that the rape had occurred the

20  other day, her failure to take any certain action that day

21  could constitute deliberate indifference.  In other words, she

22  said to K.L., you know that's what people do when they're in

23  love.  She could have said to K.L., well, would you like to

24  talk to somebody, should I get C.B. out of school because he

25  raped you.


                                7


1        THE COURT:  It was information in her knapsack

2   which, according to your theory, should have supplied an

3   additional credence to the complaints that allegedly came

4   later, to that extent I agree with that.

5        MR. OLDS:  But if we could take it to the next step,

6   which is, well, what was she deliberately indifferent to.  She

7   was deliberately indifferent to an instance of severe or sexual

8   harassment.  Obviously, nothing could be more severe than rape.

9        THE COURT:  I'm not giving the charge.  Discussion

10  is over on the point.  I will give you -- I'm going to give you

11  one more pass, but I want to talk about the charge more

12  generally.  I'm going to turn the floor over to you -- but

13  before I do, I have a question.  If I was inclined subject

14  to -- did you review Mr. Marnen's suggested verdict form?

15       MR. OLDS:  Right.  I thought they were too long.

16       THE COURT:  What's wrong with that?

17       MR. OLDS:  Because I don't think you need to go down

18  through each element of the case here.  I think mine, which

19  says was there severe or did she suffer from severe, pervasive

20  harassment and was deliberately indifferent to that.  Mr.

21  Marnen, like when you parse -- if you parse this so finely, I

22  think what you're really inviting is an inconsistent verdict.

23       THE COURT:  Well, then parse it for me and tell me

24  its potential inconsistency.  I'm not saying shorter may not be

25  better.  I'm just saying accurate is always better than

1  inaccurate.

2      MR. OLDS:  First of all, I think you can combine one

3  and two, I don't know you need to have both of those

4  questions -- I think, for instance, four and five, I'm not

5  certain where that more vulnerable to additional harassment

6  comes from.  Is that part of the test.

7      THE COURT:  Actually, I'm glad you raised that

8  because I have a question on that.  And, Mr. Marnen, having

9  reviewed your suggested jury interrogatories, I was essentially

10  of the opinion or was of the opinion that they were accurate

11  and they logically laid out sequentially what the jury should

12  do.  But I have a lingering question about this.  Look at four

13  and five.  Four's a deliberate indifference question.  This is

14  right from my charge, also, essentially.  "Do you find that the

15  Erie School District acted with deliberate indifference to the

16  known harassment of plaintiff R.P. by other students after the

17  December 19, 2001 rapes?"  Clear enough, that is the required

18  requisite mens rea.  But five.  "Do you find that the

19  deliberate indifference of the defendant caused plaintiff R.P.

20  to undergo additional harassment or made her more vulnerable to

21  additional harassment?"  For the life of me I'm not sure what

22  that means?

23         MR. MARNEN:  It means to prove a Title IX peer

24  harassment case, you have to demonstrate that the harassers

25  were in a sense essentially enabled by the indifference to

9

1  causing them to harass the plaintiffs further.  I got this

2  right out of Davis_v._Monroe_County.
        _____ __ _____ _____

3         THE COURT:  I'm not questioning its pedigree.  I'm

4  just anticipating a jury question on the point.  Maybe Davis
                                                        _____

5  meant to say and as a result of the deliberate indifference,

6  the harassment was sustained.  In other words, a failure to

7  prevent that by -- the phrase additional, it's confusing to me,

8  notwithstanding the fact it comes from the case.

9         MR. MARNEN:  The word additional is mine, I will

10  confess to that.

11         THE COURT:  It is.

12         MR. MARNEN:  But the concept I think is from Davis.
                                                        _____

13  That if the district is indifferent to harassment, there is no

14  further harassment, there is no liability.

15      THE COURT:  Take out the word additional, which is

16  your word --

17      MR. MARNEN:  Okay.  Caused plaintiff to undergo

18  harassment, or made her more vulnerable to additional

19  harassment.  I don't have a problem with additional coming out.

20      THE COURT:  Reads better to me, too.

21      MR. MARNEN:  I would suggest, too, if you do use

22  this in number five, that after defendant, Erie School District

23  be inserted.

24      THE COURT:  Also on number six the phrase additional

25  should come out?


10


1      MR. MARNEN:  Yes.  Then number 12 I would put Erie

2  School District in there, too.  You have to take additional out

3  of some of the other ones.  K.L. is a mere image of R.P.'s.

4      THE COURT:  Wherever additional appears, it comes

5  out.  You said the Erie School District should be added?

6      MR. MARNEN:  Number 12 I would stick in Erie School

7  District after the word defendant, for the sake of clarity.

8    And number five and number 12, I would do that.  They were

9    inadvertently left out when this was prepared.

10          THE COURT:  What would it be?

11          MR. MARNEN:  Do you find that the deliberate

12    indifference of defendant Erie School District caused plaintiff

13    R.P. to undergo harassment, made her more vulnerable to

14    harassment.

15          THE COURT:  Do you agree with that, Mr. Olds?

16          MR. OLDS:  Yes.

17          THE COURT:  That having been said, getting back to

18    your point, aside from the fact you think they're longer than

19    they need to be, is there anything legally incorrect in the

20    structure of the proposed special verdict form as submitted by

21    the defendant?

22          MR. OLDS:  Well, yeah, I think that the test is

23    severe or pervasive.

24          THE COURT:  Which one --

25          MR. OLDS:  For instance, number two.  This is in our

11

1    jury instructions, also.  In Andrews_v._City_of_Philadelphia --

2          THE COURT:  Hang on a second, you don't have to

3   argue the point, I'm familiar with the case.  But what

4   precisely is the language in two that you think is --

5          MR. OLDS:  It should be severe or pervasive.

6          MR. MARNEN:  That's right.  I think if one event is

7   sufficiently severe, can be enough.

8          THE COURT:  We'll look at the case, see what the

9   cases say on it.

10          MR. OLDS:  In those two Supreme Court cases, Boca
                                            ‾‾‾‾

11   Raton -- I forget the name of the other case, it was decided.
     ‾‾‾‾‾

12   I think the Third Circuit has addressed the difference between,

13   this was in Andrews, they said regular and pervasive.  And then
               ‾‾‾‾‾‾‾

14   the Supreme Court said severe or pervasive, there's a

15   difference in the language.  But the courts have said probably

16   the Supreme Court is right.

17          THE COURT:  If it was severe or pervasive, that

18   would suggest mere severity alone and severity could be

19   sufficient.

20          MR. MARNEN:  Your point's well-taken, judge.  I

21  guess I'll withdraw my agreement.

22          THE COURT:  My point is if it's severe or pervasive,

23  then severity alone could suffice to support a claim absent

24  severity, isn't that right?

25          MR. OLDS:  Yes.  The Supreme Court says that.


                              12


1           THE COURT:  I disagree.

2           LAW CLERK:  We took that out.

3           THE COURT:  I will say this, Mr. Olds, this much I

4   do know.  One instance that is sufficiently severe can

5   constitute actual harassment.  But I'm aware of no case law

6   that says the pattern of non-severe conduct can do it.  But

7   I'll look at it.

8           MR. OLDS:  The Supreme Court has said severe or

9   pervasive.

10          THE COURT:  We'll check the case law on that.  What

11  else besides that from a substantive legal standpoint?

12          MR. OLDS:  On page four you add to suffer additional

13  harassment -- you would take out that additional.

14          THE COURT:  We're going to take out additional all

15  the way through.

16      MR. OLDS:  I didn't have any other points.  If I

17  could just address this, this is going back to this one point

18  again.

19      THE COURT:  Sure.

20      MR. OLDS:  Chronologically, there can be, in terms

21  of satisfying the first two elements --

22      THE COURT:  The first one being if there is

23  intentional harassment, the second one being?

24      MR. OLDS:  Was severe or pervasive.  And that

25  conduct, even though the school district doesn't, may not be


13


1  aware of it, can suffice to satisfy the first two requirements.

2  The school district is not responsible for that conduct or any

3  conduct, however, until it has knowledge of the conduct.  And

4  then that is why the jury has to find the first two, but then

5  in addition, the jury has to find the third, that the school

6  district became aware of that severe and pervasive harassment

7  and was deliberately indifferent to it.  And so I think that

8  the rape happened, it could be considered as to satisfy the

9    first two, and it's only the school district's deliberate

10    indifference to that and what's happened afterwards, that could

11    give the school district liability.

12        THE COURT:  Besides just saying I disagree with him,

13    why substantively do you think that's incorrect, Mr. Marnen?

14        MR. MARNEN:  As to what he just said?

15        THE COURT:  Yes.

16        MR. MARNEN:  He's starting to convince me that he is

17    correct.  He's right that to be indifferent to harassment, the

18    harassment either has to occur simultaneously with the

19    indifference or prior to it.  The harassment also has to be

20    harassment of which the district has control, so they can do

21    something about it.

22        THE COURT:  Right.

23        MR. MARNEN:  In the case of the rape, one of the

24    assailants arguably was going home from school at the time it

25    happened.  That's A.K., A.K., I'm sorry.  The others, however,


14


1    I think it's not debatable, they were not going home, they were

2    just hanging around, as were the victims.  They got out of

3  school at 3 o'clock in the afternoon.

4      MR. OLDS:  Actually, C.B. testified he was in PASS.

5  A.F.'s letter says that C.B. and A.K. were in PASS.  And so

6  there is evidence that indicates that.

7      MR. MARNEN:  I guess there is.  It is there, it's

8  not credible because it's contradicted by the records.  It's

9  there.  So I think he's right.  That it is harassment that you

10  can be indifferent to under Title IX.  If it causes harassment,

11  then there's liability.

12      THE COURT:  Okay.  Where is that in my charge?

13      MR. OLDS:  Page three, it would take out --

14      THE COURT:  "You may consider the rape of the

15  plaintiffs which occurred at the laundromat across the street."

16      MR. OLDS:  However, the court has previously

17  determined that the school district could not have had actual

18  knowledge of the events leading up to the rape -- I think that

19  says it.  You have found that.  And then the last line should

20  be, you should only consider the school district's response to

21  information it had after the rape.

22      THE COURT:  Where were you?

23      MR. OLDS:  Next to last line.  Therefore, in

24  determining whether the harassment was severe, pervasive --

25  actually, you're going back to severe and pervasive there.  I

15

1  wonder if you could just take out --

2      THE COURT:  Take the sentence out all together,

3  given what we've just said right above it.

4      MR. OLDS:  I wonder if you could say you may

5  consider the rape and the harassment which occurred after --

6      THE COURT:  I think it's redundant.  We're going to

7  take it out.

8      MR. OLDS:  But they may consider events that

9  happened after the rape as well.

10      THE COURT:  That's a point well-taken, let me just

11  think about this for a second.  How about this for the first

12  sentence.  In evaluating whether the harassment was severe and

13  pervasive, you may consider the rape of the plaintiffs which

14  occurred across the street from the school on December 19,

15  2001.  As well as the alleged subsequent -- as well as the

16  alleged subsequent harassment and/or assaults.

17      MR. OLDS:  Okay.

18      THE COURT:  Any objection to that, Mr. Marnen?

19        MR. MARNEN:  No.

20        MR. OLDS:  Then that third sentence will come out.

21        THE COURT:  That kind of takes care, in essence,

22   your two supplemental points, doesn't it?

23        MR. OLDS:  Yes.  The first one was really the

24   important one that I was trying to make.

25        THE COURT:  Anything else you want?


16


1        MR. OLDS:  No.

2        THE COURT:  That correction having been made, in

3   other words, with the functional incorporation of your

4   supplemental point, you have no objection to the charge?

5        MR. OLDS:  Except I think it should be or, instead

6   of --

7        THE COURT:  We're going to check that.  What about

8   you, Mr. Marnen?

9        MR. MARNEN:  Page 14.  Right in the middle where it

10   says fifth, the first item -- you should take out additional,

11   that occurs twice in that last line.  Page four, I misspoke,

12   third paragraph.

13          THE COURT:  In other words, additional should come

14   out.

15          MR. MARNEN:  I think you need to add on there, that

16   is for another element, that the harassment, what I call the

17   additional harassment, caused injury, that's another element.

18   That's in my proposed verdict slip.  That's point number six in

19   my proposed verdict slip.

20          THE COURT:  In other words, it is a completed cause

21   of action?

22          MR. MARNEN:  Yes, sir.

23          THE COURT:  Just as an aside, I can't imagine if

24   they were to find there had been that type of harassment, that

25   they not find that there had been some type of injury.  I think

17

1   as a technical matter it would require some type of injury to

2   complete the statutory tort.  Do you have any objection to

3   that, just adding and caused injury?

4          MR. OLDS:  No objection to that.

5          THE COURT:  We'll just include that as part of the

6   fifth element, and caused injury.

7          MR. MARNEN:  That's fine.  This is a really minor

8    point, T.N.'s name is misspelled in the second to last line on

9    the next page.

10         THE COURT:  Okay.

11         MR. MARNEN:  Pages 13 and 14 indicate that when

12    there's knowledge or reckless disregard of truth and/or

13    falsity, you may presume that she had her reputation injured,

14    that she suffered damages.  I don't think that's the law.

15         THE COURT:  Where is that?

16         MR. MARNEN:  Pages 13 and 14, last paragraph on 13,

17    first on 14.  I think they still have to prove damage, injury.

18         THE COURT:  In other words, the mens rea of the

19    actor can't drive the damages?

20         MR. MARNEN:  Right.  It does drive punitive damages

21    but not compensatory.  I have the case here.

22         THE COURT:  We'll check it.  Is that it?

23         MR. MARNEN:  It doesn't address that specific topic,

24    it addresses the significance of slander per se.  And indicates

25    that the only significance of slander per se, it relieves the

18

1  plaintiff of the burden of proving special damages.  But the

2  plaintiff still has to prove impairment of reputation.

3        THE COURT:  We'll take a look at it.

4        MR. OLDS:  You might be able to take the whole

5  paragraph out, it starts on 13 and goes over to 14.

6        THE COURT:  I think that's right.  I don't think,

7  with all due respect to the Pennsylvania jury instructions, I

8  don't think that's an accurate statement of the law.

9        MR. MARNEN:  I have no other observations.

10        (Discussion held off the record.)

11        THE COURT:  Back on the record.

12        MR. OLDS:  If you're changing the instructions, the

13  verdict slip should have after the December 19, 2001 rape taken

14  out in the first and second questions.

15        MR. MARNEN:  You're right.

16        THE COURT:  Hang on a second.  I agree with that.

17        MR. MARNEN:  That should be taken out of two, three,

18  four -- eight.

19        THE COURT:  Did you say two?

20        MR. MARNEN:  I did.

21        THE COURT:  What did you say about three, I think

22  three should stay the way it is?

23        MR. OLDS:  I think that it's really, you're

24  instructing them that they can't consider that rape as part of

25  the actual knowledge, that they can't consider that.  But I

19

1  think -- I think that it's sufficient for you to ask them did

2  they have actual knowledge.

3        MR. MARNEN:  I think that the actual knowledge of

4  the rape is enough to get this going.  I think it does have to

5  come out.

6        THE COURT:  All right.  We'll just say actual

7  knowledge of harassment of the plaintiff by other students

8  period.

9        MR. OLDS:  Same with four.

10        THE COURT:  The same thing with K.L. on her

11  questions.  I presume at this point you've rehearsed your

12  closings, how long do you figure yours is going to be?

13        MR. MARNEN:  Mine will be not less than 20 and not

14  more than 30 minutes.

15        MR. OLDS:  Mine probably will be 30 and maybe

16  slightly longer than that.

17      THE COURT:  All right.

18      (Recessed at 9:11 a.m., and reconvened at 9:25 a.m.,

19  in Judge's Chambers.)

20      THE COURT:  I want to make sure that we got this

21  right.  Because notwithstanding concessions, there is still

22  such a thing as plain error at the circuit.  I'm going back to

23  the harassment, the effect of the December 19th incident.  Let

24  me ask you this, Mr. Olds.  This is along the lines of the jury

25  being able to consider the December 19, 2001 rapes on the


                              20


1  question of whether or not the harassment was sufficiently

2  severe and pervasive to make out that prong of the test.

3  That's where we are.  It struck me as I was reflecting on this,

4  that if that proposition is right, then theoretically you could

5  get a verdict in this case even if the conduct that occurred

6  after December 19th was de minimus, no not sufficiently severe

7  and pervasive to independently support -- let me finish my

8  point, please.  To independently support a Title IX claim, but

9  you could then throw into the equation the December 19, 2001

10  rapes, for which the school district had no knowledge, to make

11  out that prong.  And to me, at least facially, is that right,

12  could that conceivably be; do you understand my point?

13       MR. MARNEN:  Don't you have to have indifference to

14  severe and pervasive harassment, that causes severe and

15  pervasive harassment, isn't that the answer?

16       THE COURT:  Yes.  But my point is -- I'm saying the

17  severe and pervasive -- arguably the one incident of rape on

18  December 19th might be the type of thing, in fact probably

19  would be the type of thing that is sufficiently severe in and

20  of itself.  But my question is logically would it make sense,

21  if all the conduct for which they could arguably be liable was

22  de minimus and if that conduct independently wouldn't be

23  sufficiently severe to make out a whole cause of action, could

24  you then throw the rape into it on the question of severity,

25  notwithstanding the fact I've already removed it from the case


21


1  on the question of notice?

2       MR. OLDS:  I'm not looking at your charge, I didn't

3  bring it in here.  I think that the jury --

4          THE COURT:  That's all right.

5          MR. OLDS:  The verdict slip tracks this, answers

6    certain questions.  They have to say was there, was she

7    subjected to harassment, was it severe and pervasive.  Do you

8    find that the school district was actually aware of harassment.

9    Do you find that the defendant school district was deliberately

10   indifferent to known harassment.  But the other students, maybe

11   you cure what you're saying after December 19, 2001.  Maybe

12   that goes back into number four.  And do you find that

13   deliberate indifference caused plaintiff to undergo harassment

14   or made her more vulnerable to harassment.  I think the

15   questions, obviously, I have to prove each element, your

16   instructions say that.

17          THE COURT:  Maybe the problem was mine.  Let me ask

18   a very simple questioned, although, the verdict form is not

19   necessarily structured this way.  If as a matter of law or fact

20   in this case the harassment post December 19th was not

21   sufficiently severe or pervasive in and of itself to

22   independently support that claim, could you still get a verdict

23   on the back of the December 19, 2001 rapes?

24          MR. OLDS:  I don't think so.  But then we wouldn't

25   be here.  There is evidence that there was harassment

file:///A|/RICHDAY5.TXT

22

1   afterwards.  We're not suggesting to the jury --

2          THE COURT:  Excuse me, it strikes me, I just throw

3   this out for consideration, I want to get this right.  I want

4   to try this case once, if we can.  Then isn't my charge

5   inconsistent on this point.  In other words, you can't get a

6   verdict absent evidence of post December 19th sufficient

7   severity, that is the way you've asked me to redo the charge.

8   The way the charge now reads, the jury could conclude, since

9   they may consider the December 19th assaults separately, but

10   only on the issue of severity, that they could find that was

11   severe but nothing else was and still bring in a verdict, isn't

12   that right -- think it through?  I am capable of the next man

13   walking down the street from becoming hopelessly confused and I

14   might be on this point and making it more difficult than it is,

15   I have to tell you it strikes me as crystal clear that there's

16   an inconsistency here, maybe not?

17          MR. OLDS:  I don't think that there is.  The

18   elements, that's why I started off with this, I said the

19   elements are apples and oranges.  The apples are what is severe

20  harassment.  The oranges are the school district's indifference

21  to severe harassment.  And did that deliberate indifference

22  cause some injury.  The problem is they could be deliberately

23  indifferent to the rape itself.

24        THE COURT:  After the fact?

25        MR. OLDS:  After the fact.  We're not talking about


23


1  like somebody calling a little girl a name.  We're talking

2  about these girls were raped.

3        THE COURT:  This isn't helpful to me.  What really

4  is helpful to me, Mr. Marnen, I'm not saying you have to say

5  anything or not --

6        MR. MARNEN:  I was waiting.  Doesn't harassment to

7  which you were indifferent have to be severe, pervasive and

8  offensive.  The problem is solved by modifying number five in

9  the verdict slip.  Do you find that the indifference of

10  defendant Erie School District caused plaintiff R.P. to undergo

11  harassment or made her move vulnerable to harassment.  That was

12  severe and persuasive and offensive to a reasonable person of

13  R.P.'s sex.

14          THE COURT:  Didn't we take out more vulnerable?

15          MR. MARNEN:  It's there.  Does that solve the

16  problem?

17          THE COURT:  Say that again, maybe it does.

18          MR. MARNEN:  Do you find that the deliberate

19  indifference of defendant Erie School District caused plaintiff

20  R.P. to undergo harassment or made her more vulnerable to

21  harassment, which was severe and pervasive and offensive to a

22  reasonable person of R.P.'s sex?

23          THE COURT:  Perhaps that does.  All right.

24          MR. OLDS:  I think that they have to be able to

25  consider the rape on the question of the first two elements.


24


1  But you're instructing -- when you go on to deliberate

2  indifference on the next page.

3          MR. MARNEN:  Number four would change it.

4          THE COURT:  The fifth element on the charge?

5          MR. MARNEN:  Yes.

6          THE COURT:  Consistent with what was just read on

7  the verdict slip.

8          MR. MARNEN:  Plaintiffs must prove by a

9   preponderance of the evidence that the alleged deliberate

10  indifference of the defendant Erie School District caused

11  plaintiff to suffer harassment or made them more vulnerable to

12  the harassment which was severe and pervasive and offensive to

13  a reasonable person of R.P.'s sex.

14          MR. OLDS:  So what you're saying is we can't just

15  stop with the rape, we have to prove that something else had

16  happened and it was of a severe and pervasive nature.

17          THE COURT:  All right.  You can tinker with this

18  while they're doing their closings.

19          (Proceedings recessed at 9:35 a.m., in Judge's

20  Chambers.)

21                  - - -

22          (Whereupon, Counsel gave their closing arguments to

23  the Jury.)

24                  - - -

25          (Proceedings recessed at 10:45 a.m., in Courtroom C;


                            25


1   and reconvened at 10:55 a.m., in Judge's Chambers.)

2    THE COURT:  Let's go on the record here.  These were

3    the interrogatories we had revised after our last discussion.

4    And, for instance, with respect to -- I think initially there

5    had been a request after two, after the December 19, 2001

6    rapes, well -- two, that after the December 19, 2001 rapes,

7    that severe, pervasive and offensive be taken out, is that

8    right?

9    MR. OLDS:  Actually one, two, three and four.  I

10   don't know why that has to appear in the question.  You tell

11   them in your instructions that the school district is not

12   responsible for the December 19th rape.  I think these

13   questions are just going to confuse the jury.

14   THE COURT:  That doesn't tell me anything.  I need

15   to know why they're confusing?

16   MR. OLDS:  The questions are, they are set up to

17   track precisely the elements of a completed cause of action.

18   (Discussion held off the record.)

19   THE COURT:  This truly is not indecision on my part,

20   I can see this glass not darkly but clearly.  I just want to

21   get it right, that's all.  The closing arguments have already

22   been made.  Mr. Marnen, I take it that by virtue of your

23  initial acquiescence that the December 19, 2001 -- this point

24  is academic -- again, by the way, because I'm convinced they're

25  going to find it.  I want to make sure that we're right.  I

26

1  find myself in the unusual position of trying to protect the

2  record from plain err.  I can't understand how you're right.

3        MR. MARNEN:  Maybe not I'm not.  The way I was

4  seeing it was if the rape occurred within the "jurisdiction" of

5  the school district, and the administrators at Strong Vincent

6  were indifferent to it, did nothing about it, and caused more

7  severe harassment to occur, they're not responsible for the

8  rape, but it makes them responsible for the subsequent

9  harassment.

10        MR. OLDS:  Let's look at it like this.

11        THE COURT:  Here's an easy way to clear this up,

12  maybe it's not too late in the day to do this.  The district

13  hotly disputes its deliberate indifference, for all the reasons

14  that we've spent --

15        MR. MARNEN:  Yes.

16        THE COURT:  The district disputes the fact that

17  these girls were subjected to intentional harassment?

18      MR. MARNEN:  No.  No, I didn't stand up there and

19  concede that.

20      THE COURT:  Does the district dispute the fact that

21  both of these girls were subjected to harassment that was

22  severe or pervasive?

23      MR. MARNEN:  No.

24      THE COURT:  Well, then, guess what, we just solved

25  the problem.  We've just solved the problem.  The jury is not


                                27


1  because, frankly, the way the evidence has come in, I can't see

2  how any reasonable juror could have concluded otherwise.  So

3  you know what we've done.

4      MR. MARNEN:  We'll start with three.

5      THE COURT:  We're going to start with three.  I

6  should have thought about this two hours ago.  That's it, that

7  solves it.  All right.

8      MR. OLDS:  Judge, will you let us look at the charge

9  before you give it, one more time?

10      THE COURT:  I will, out of an abundance of caution.

11          (Discussion held off the record.)

12          (Proceedings recessed in Judge's Chambers; and

13    reconvened at 11:28 a.m., in Courtroom C.)

14          THE COURT:  My clerk is giving you, first of all,

15    the two pages of the charge that were changed consistent with

16    the discussion in chambers, I want you to quickly look at it.

17    It's the question of intentional harassment, as to severe and

18    pervasive, I think it's consistent with our previous

19    discussion.

20          MR. OLDS:  Your Honor, did you take out -- let me

21    just check.

22          THE COURT:  The only difference -- Mr. Olds, I

23    removed from the jury's consideration the issue of intentional

24    harassment, whether it was pervasive or severe.  All right.

25    You also have in front of you interrogatories to the jury,


28


1    which I believe should now be consistent with our in-chambers

2    discussion.  Would you please glance at them.  Is it acceptable

3    to the plaintiff?

4          MR. OLDS:  Yes.

5        THE COURT:  Is it acceptable to the defendant?

6        MR. MARNEN:  It's acceptable.

7        (Whereupon, at 11:32 a.m., the Jury reenters

8   Courtroom C.)

9        THE COURT:  I apologize for the delay.  Ladies and

10   gentlemen, it is now my duty to tell you about the law that is

11   to be applied to this case in which you will be the finders of

12   fact.  You have heard all the arguments and all of the evidence

13   and it my function to charge you on the law which you are

14   required to consider and which will govern your deliberations.

15        For convenience, in the course of these

16   instructions, R.P. and K.L. may be referred to as the

17   plaintiffs, which is just the legal name for the people filing

18   the lawsuit.  The School District of the City of Erie and Linda

19   L. Cappabianca may be referred to as the defendants, which is

20   the legal name for the party against which a suit is filed.

21        In deciding these issues of fact, it is your duty to

22   follow these instructions.  In doing so, you must take into

23   consideration all of the instructions which I give you, and not

24   pick out any particular instruction and disregard another one.

25   Your duty is to determine the facts from the evidence that has

29

1  been produced in open court.  You are to apply the facts as you

2  find them to the law that I am giving you, and neither sympathy

3  nor prejudice should influence you in any way.  Our system of

4  law does not permit jurors to be governed by sympathy,

5  prejudice or public opinion.

6          At the outset, you should understand that I am

7  absolutely neutral in presenting these instructions to you.

8  I will not give you my opinion about any issue of fact to be

9  determined by you.  Nothing in the way in which I give my

10  instructions to you is intended as an expression of my opinion

11  about any fact at issue in this case.

12          I will now instruct you on the substantive

13  principles of law that govern the plaintiffs' claims in this

14  case.

15          Title IX, a law adopted by the United States

16  Congress, provides that "no person shall, on the basis of sex,

17  be excluded from participation in, be denied the benefits of,

18  or be subjected to discrimination under any education program

19  or activity receiving federal financial assistance."  In

20  certain situations student-on-student sexual harassment, if

21   sufficiently severe, can amount to a violation of Title IX by a

22   school district.  Now, the court has already concluded, as a

23   matter of law, that plaintiffs R.P. and K.L. were subjected to

24   harassment because of their sex by the intentional conduct of

25   other students.  The court has also concluded as a matter of

30

1   law that this harassment was severe or pervasive, and offensive

2   to a reasonable person of the plaintiffs' sex.  Therefore, in

3   order for plaintiffs to establish their Title IX claim against

4   the defendant Erie School District, plaintiffs have the burden

5   of proving each of the following elements of their claim by a

6   preponderance of the evidence.

7          First, plaintiffs must prove by a preponderance of

8   the evidence that the defendant Erie School District had actual

9   knowledge of the sexual harassment.  The Erie School District

10   is deemed to have had "actual knowledge" of the discrimination.

11   If you find that Ms. Cappabianca or Ms. Woods had knowledge of

12   facts sufficiently indicating substantial danger to the

13   plaintiffs such that the institution can reasonably be said to

14   be aware of the danger.

15          Second, plaintiffs must prove by a preponderance of

16    the evidence that the defendant Erie School District acted with

17    deliberate indifference to the known acts of harassment.  A

18    school district acts with "deliberate indifference," if the

19    school district's response to the alleged harassment or lack of

20    response to the alleged harassment is clearly unreasonable in

21    light of the known circumstances.  If the school district has

22    actual knowledge that its efforts to correct known harassment

23    are ineffective, but the school district persists in those

24    efforts to no avail, the district has failed to act reasonably

25    in light of the known circumstances.


31


1          Third, the plaintiffs must prove by a preponderance

2     of the evidence that the alleged deliberate indifference of the

3     defendant Erie School District caused plaintiffs to suffer

4     harassment or made them more vulnerable to harassment and that

5     the deliberate indifference of the defendant Erie School

6     District caused injury.

7          In addition to the Title IX claim asserted by both

8     plaintiffs against the Erie School District, plaintiff R.P. has

9   asserted a claim of defamation against defendant Linda

10   Cappabianca.  A defendant who publishes a statement such as

11   that allegedly attributed to defendant Cappabianca in this case

12   is liable for the proven actual harm that the statement causes.

13        To prevail upon her defamation claim, plaintiff R.P.

14   must first establish by a preponderance of the evidence that

15   the alleged statement was actually made.  Then if you find that

16   defendant Cappabianca made the alleged communication to

17   Robin J. and T.N., you must determine whether the statement

18   caused actual injury to plaintiff R.P.  A false and defamatory

19   communication is a cause of actual injury if it is a

20   substantial factor in bringing the injury about.  A false and

21   defamatory communication is not a cause of actual injury if it

22   has no connection or only an insignificant connection with the

23   injury.  Actual injury can include impairment of reputation and

24   standing in the community, personal humiliation and mental

25   anguish and suffering.


32


1        If you conclude by a preponderance of the evidence

2   that a statement was made and that it caused actual injury, you

3    may award general damages such as is reasonable.  In addition,

4    if you find in favor of plaintiff R.P. and against defendant

5    Cappabianca, you must also determine for purposes of damages,

6    of which I will later speak, whether defendant Cappabianca

7    acted intentionally or recklessly.

8         A person intentionally makes a defamatory

9    communication when she knows that it is false.

10        A person recklessly makes a defamatory communication

11   when she does so with disregard for whether it is true or

12   false, i.e., when she does so despite serious doubts about the

13   truth of the communication or when she possess a high degree of

14   awareness of its probable falsity but makes it anyway.  Serious

15   doubt and/or the possession of a high degree of awareness of

16   probable falsity may be inferred from relevant circumstantial

17   evidence of a statement if its of the mind of a person who

18   transmitted the defamation.  Testimony by that person denying

19   serious doubt and/or a high awareness of its probable falsity

20   does not automatically defeat proof of recklessness but rather

21   is to be weighed with all the other evidence of that present

22   state of mind.

23        I'll now give you a few guidelines on how to

24  deliberate upon the evidence which you have heard.  As I told

25  you at the beginning of the case, the evidence with which you

33

1  are to -- let me say that again.  The evidence which you are to

2  consider consists of the testimony of the witnesses and the

3  exhibits offered and received into evidence.  The proceedings

4  during the trial have been governed by the rules of law.  And

5  we've had a number of conferences to determine what evidence

6  should be allowed to be submitted to you.

7       From time to time it has been my duty to rule on

8  evidence to be submitted and you should not concern yourselves

9  with the reasons for those rulings.  You are not to consider

10  any testimony or any exhibit to which I have sustained an

11  objection, or any exhibit which may have been ordered stricken

12  from the record or which has not been introduced into evidence.

13       Now, the attorneys have argued very ably and

14  thoroughly and have been very well prepared.  But their

15  remarks, that is what they have said to you is not evidence.

16  They have argued to help you understand the facts and their

17  respective theories of the case, but their arguments again are

file:///A|/RICHDAY5.TXT

18  not evidence.  You must consider as evidence only the testimony

19  and exhibits.  If you should find that any argument, statement

20  or remark of counsel has no basis in the evidence, then you

21  should disregard that argument, statement or remark.

22  Similarly, if you find that anything I tell you about the facts

23  is not based on the evidence, you should disregard that, too,

24  because you are the finders of the fact.  It is up to me only

25  to tell you what the law is.


34


1        The next matter which I will now instruct you is the

2  applicable burden of proof.  The burden of proof is a concept

3  which you must understand in order to give the case proper

4  consideration because a verdict cannot be based on speculation,

5  guess or conjecture.

6        In civil cases such as this one, the plaintiff has

7  the burden of proving those contentions that entitle them to

8  relief by a preponderance of the evidence.  Thus, the

9  plaintiffs carry the burden of proving by a preponderance of

10  the evidence each of the elements that I have previously set

11  forth for you.

12          The fair weight or preponderance of the evidence

13   means evidence which has been more convincing force, when it is

14   weighed against the evidence opposed to it, so that the greater

15   probability of truth lies therein.  If you were to visualize

16   evidence as something weighed on an ordinary balance scale and

17   if the evidence admitted in support of the claim made by the

18   party having the burden of proof is more weighty in probative

19   value than the evidence offered in opposition so that it tips

20   the scales on the side of that party, then the party has proven

21   the claim by the fair weight or preponderance of the evidence.

22          If, on the other hand, the evidence admitted in

23   opposition to the claim of the party having the burden of proof

24   outweighs or equally balances the evidence produced in support

25   of the claim, it can be said there has been a failure to carry


                              35


1   the burden of proof imposed by law.

2          It's important to note that we speak here of the

3   quality of evidence, not necessarily its quantity.  Also, all

4   the evidence admitted in support of and in opposition to the

5   claim must be considered and not just the evidence offered by

6   the party having the burden of proof.  In short, the test is

7   not which side brings the greater number of witnesses or

8   presents the greater quantity of evidence, but which witness or

9   witnesses and which evidence you consider most worthy of

10   belief.  Even the testimony of one witness may outweigh that of

11   many if you have reason to believe his or her testimony in

12   preference to their testimony.

13        In deciding the facts of this case, members of the

14   jury, you should consider all the evidence presented by the

15   parties.  Consideration of all the evidence, however, does not

16   mean that you must accept all the evidence as true or accurate.

17   In this connection, rather, the evidence in the case consists

18   of the sworn testimony of the witnesses, regardless of who may

19   have called them, all exhibits received into evidence,

20   regardless of who may have produced them, and all facts which

21   were admitted to or stipulated to by the parties.

22        While you may consider only the evidence in the case

23   in arriving at your findings of fact, you are permitted to draw

24   such reasonable inferences from the testimony and exhibits of

25   counsel as you feel are justified in light of common

36

1  experience.  Now, an inference is not a suspicion or a guess.

2  A suspicion is a belief based on circumstances which do not

3  amount to proof.  A guess is speculation or conjecture.  An

4  inference, on the other hand, is a reasoned logical decision to

5  conclude that a disputed fact exists on the basis of another

6  fact that you know exists.  In other words, you may reach

7  conclusions which reason and common sense lead you to reach

8  from the facts which have been established by a preponderance

9  of the evidence.  There are times when different inferences may

10  be drawn from the facts, whether proved by direct or

11  circumstantial evidence.  Plaintiffs will ask you to draw one

12  set of inferences, while the defendants will ask you to draw

13  another.  It is for you and for you alone to determine what

14  inferences you will draw.

15        If you find that the defendants have destroyed

16  documents or withheld evidence which they ought to have

17  produced for this litigation, then in certain instances you may

18  draw an inference that if produced, that evidence would have

19  been unfavorable to that defendant.  For this inference to

20  apply, the evidence in question must have been within the

21  defendant's control and it must appear that there has been

22   actual suppression or withholding of the evidence.  No

23   unfavorable inference arises when the circumstances indicate

24   that the document or article in question has been lost or

25   accidentally destroyed.  Or where the failure to produce it is

37

1   otherwise properly accounted for.

2          Now, in deciding this case, members of the jury, you

3   are required to pass on the credibility of witnesses.

4   Credibility simply means believability.  Your function is to

5   decide what is believable, who is believable, and how much

6   weight to give it.  In doing this, you must use your common

7   sense, your varied backgrounds and experience.  The usual

8   indicators of truth that you all use in your daily lives.

9          A witness's testimony depends on the witness's

10   observation and perception of what he or she testifies to.

11   It also depends on the witness's memory and what he or she

12   experienced at the time and the witness's ability to create

13   that experience in court.

14          You may consider the degree of the witness's

15   intelligence, the demeanor and appearance of the witness, the

16   witness's frankness, his or her candor, the evasiveness or

17   responsiveness, as well as the reasonableness or

18   unreasonableness of the witness's testimony in light of all the

19   circumstances.  You may also consider any interest or bias that

20   might lead a witness to exaggerate, understate or otherwise

21   color his or her testimony, such as a witness's interest in the

22   outcome of the case or bias or prejudice that a witness might

23   have in favor of or against a party.  This is not to suggest

24   that an interest or bias of a witness would lead the witness to

25   tell you a falsehood, or color his or her testimony one way or

38

1   the other.  But bear these factors in mind in passing upon the

2   credibility or believability of every witness.

3          I charge you that if you find that a witness has

4   lied to you in any material portion of his or her testimony,

5   you may disregard that witness's testimony in its entirety.

6   I say that you may disregard the testimony, not that you must.

7   If you choose to disregard the testimony of any witness because

8   you believe that the witness has been untruthful with you, it

9   must have been untruthfulness in a material portion of that

10  witness's testimony.  You must be careful, though, that the

11  untrue part of the testimony was not the result of a mistake or

12  inadvertence, but was rather willful, and stated with a design

13  of intent to deceive.

14        Regardless of whether a witness's testimony is

15  untruthful by design or inadvertence, however, you may reject

16  all or any portion of the testimony, as in the case of any

17  witness if the testimony is not believable by you.  On the

18  other hand, you may be convinced that despite the falsity of a

19  part of the witness's testimony, he or she in other parts

20  testified truthfully.

21        You may find inconsistencies in the evidence, even

22  actual contradictions in the testimony of witness's.  Although,

23  it does not necessarily mean that any witness has been

24  willfully false.  Poor memory is not uncommon.  Sometimes a

25  witness forgets, sometimes he or she remembers incorrectly.


                              39


1  It's also true that two persons witnessing the same incident

2  may see it or may hear it differently.  If different parts of

3  the testimony of any witness or witnesses appear to you to be

4  inconsistent, you should try to reconcile the conflicting

5  statements whether of the same or of different witnesses.  And

6  you should do so if it can be done fairly and satisfactorily.

7  If, however, you find that there is a genuine and

8  irreconcilable conflict in the testimony, it is your duty and

9  your function to determine which if any of the contradictory

10  statements you will believe.

11        Now, as you will recall, that Dr. Schachner gave

12  testimony in this case as an expert.  A witness who has special

13  knowledge, skill, experience or training in a particular

14  science, profession or occupation, may give his or her opinion

15  as an expert on any matter in which that witness's skill,

16  experience or training in the particular science, profession or

17  occupation has been shown.  In determining the weight to be

18  given to an expert's opinion, you should consider his or her

19  qualifications and reliability and the reasons given for the

20  opinion.  You are not bound by an expert's opinion merely

21  because he or she is an expert.  You may accept it or reject it

22  as in the case of any other witness.  Give it the weight, if

23  any, you think it is entitled to.

24        In general, the opinion of an expert only has value

25   when you accept the facts on which it is based.  This is true

40

1   whether the facts are assumed hypothetically by the expert,

2   come from his or her personal knowledge, or come from some

3   other proper source, or any combination of sources.

4        I will now instruct you on the law as it relates to

5   damages.  The fact that I am instructing you on the proper

6   measure of damages should not be considered as intimating any

7   view of mine as to which party is entitled to your verdict in

8   the case.  Instructions as to the measure of damages are given

9   for your guidance in the event you should find in favor of the

10   plaintiffs from a preponderance of the evidence in this case in

11   accordance with the other instructions.  Plaintiffs are not

12   required to prove their damages by mathematical certainty.  But

13   they do have the burden of proving their entitlement to damages

14   by a preponderance of the evidence.

15        You may award damages on plaintiffs' Title IX claim

16   only if you find in favor of the plaintiffs as to the claim.

17   You will not consider damages unless you find that the Erie

18   School District is liable to the plaintiffs.  If you find for

19   plaintiffs under their sexual harassment claim, you may award

20   them compensatory damages.  Compensatory damages include

21   compensation for any emotional pain, suffering, inconvenience,

22   mental anguish and loss of the enjoyment of life that the

23   plaintiffs suffered as a result of the deliberate indifference

24   of the defendant Erie School District to the harassment

25   suffered by the plaintiffs.  Of course, for items such as these

41

1   there is not and cannot be a fixed measurement.  It is measured

2   by the character, nature and extent of the injuries as shown

3   by the evidence.  It is not compensation from a sentimental or

4   benevolent standpoint.  But an amount that would be the most

5   reasonable amount of compensation under the circumstances shown

6   by the evidence.  You should consider all the facts and

7   circumstances in evidence and give to each plaintiff the amount

8   that you believe will equitably, fairly and justly compensate

9   them for these damages.

10         As I previously stated, the court has determined

11   that the Erie School District could not have had actual

12   knowledge of the events leading up to the December 19, 2001

13   rape that occurred in the laundromat.  Therefore, you may not

14   award damages for injuries that flows solely from or were

15   caused solely by that rape.  Rather, you may only award damages

16   for injuries that you find that the plaintiffs suffered

17   stemming from conduct which occurred after the rape.  However,

18   in determining the amount of damages, if any, which you may

19   find the plaintiffs are entitled to as a result of the

20   harassment experienced after December 19, 2001, you may

21   consider whether any such damages were acerbated by virtue of

22   the plaintiffs' psychological condition as a result of the

23   December 19, 2001 rapes.

24        Similarly, you may find -- let me say that again.

25   Similarly, you may award damages to plaintiff R.P. on her


                                  42


1   defamation claim only if you find in her favor on that claim.

2   If you find that R.P. was defamed, then she is entitled to be

3   fairly and adequately compensated for all the harm she suffered

4   as a result of the false and defamatory communication published

5   by defendant Cappabianca.  The injuries for which you may

6   compensate the plaintiff by an award of damages include the

7   actual harm to R.P.'s reputation, which you find resulted in

8   the defendant Cappabianca's conduct.  The emotional distress,

9   mental anguish and humiliation which you find that R.P.

10  suffered as a result of defendant Cappabianca's conduct.  And

11  any other special injuries which you find that R.P. suffered as

12  a result of the defendant Cappabianca's conduct.

13        In determining the amount the amount of award or

14  such presumed injury to R.P.'s reputation, you may consider her

15  character and previous general standing and reputation in her

16  community.  You may also consider the character of the

17  defamatory communication which defendant Cappabianca allegedly

18  made.  It's area of dissemination and the extent and duration

19  of the publication.

20        Finally, in addition to the damages mentioned above,

21  the law permits a jury under certain circumstances to award the

22  injured person punitive damages in order to punish the

23  defendant for some extraordinary misconduct and to serve as an

24  example or warning to others not to engage in such conduct.

25        Here, if you find that the defendant Cappabianca

43

file:///A|/RICHDAY5.TXT

1   demonstrated actual malice in making the defamatory statement

2   about R.P., you may award punitive damages against defendant

3   Cappabianca.  In order to prove actual malice, R.P. must

4   demonstrate that defendant Cappabianca published a defamatory

5   communication with the knowledge that it was false or in

6   reckless disregard of whether it was true or false.

7   If you find that the defendant Cappabianca acted with actual

8   malice in publishing the defamatory communication, it is your

9   job to fix the amount of punitive damages to be awarded to R.P.

10   and against defendant Cappabianca.  In doing so, you may

11   consider any or all of the following factors.  The character of

12   the defendant's act.  The nature and the extent of the harm to

13   plaintiff caused by the defendant.  And the wealth of the

14   defendant insofar as it is relevant in fixing an amount that

15   will punish her and deter her and other individuals from

16   similar conduct in the future.

17        The amount of punitive damages award, if any, must

18   not be the result of passion or prejudice against the

19   defendant.  The sole purpose of punitive damages is to punish

20   the defendant's allegedly outrageous conduct and to deter the

21   defendant and others from similar acts.

22        Now, I'm going to backtrack a little bit, this

23  generally appears in my general charge, but for some reason it

24  was inadvertently omitted.  But I want to talk to you a little

25  bit about direct and circumstantial evidence.


                                    44


1           There are two types of evidence which you may

2   properly consider in deciding the issues of fact.  One type of

3   evidence is called direct evidence.  Direct evidence is where a

4   witness testifies to what he or she saw, heard or observed.  In

5   other words, when a witness testifies about what is known to

6   him or her of his or her own knowledge, by virtue of a

7   witness's senses, what he or she sees, feels, touches or hears,

8   that's called direct evidence.

9           The other type of evidence is called circumstantial

10  evidence.  Circumstantial evidence is evidence which tends to

11  prove that a disputed fact by proof of other facts.  I will

12  give an example of what the term circumstantial evidence means.

13  Assume that when you came into the courthouse this morning the

14  sun was shining, it was a nice day.  Of course, that happily

15  was true.  Assume that the courtroom blinds here were drawn so

16  you could not look outside.  And as you were sitting here,

17   someone walked in the back with an umbrella that was dripping

18   wet.  Somebody else then walked in with a raincoat that was

19   dripping wet.  You cannot look outside of the courtroom to see

20   whether it was raining, so you have no direct evidence of that

21   fact.  But based on the combination of facts that I've asked

22   you to assume, it would be reasonable and it would be logical

23   for you to conclude that it had been raining.

24         That is all there is to circumstantial evidence.

25   You infer on the basis of reason, experience and common sense


45


1   from an established fact the existence or the nonexistence of

2   some other fact.

3         Circumstantial evidence is of no less value than

4   direct evidence.  As a general rule, the law makes no

5   distinction between direct and circumstantial evidence.  The

6   law simply requires that before making a finding of fact, the

7   jury must be satisfied that the fact has been proved by a

8   preponderance of the evidence in the case.

9         Now, as I mentioned to you at the outset, I am

10   entirely neutral about the outcome of this case.  I do not want

11  you to think that anything I have said, any instruction I have

12  given you or any ruling I may have made on the evidence, or any

13  statement I made either to counsel or to you implies that I

14  have any position in this case at all, other than to give you

15  fairly the law that you are required to apply and to rule

16  fairly and impartially on the evidence that has been submitted

17  to you.  I have absolutely no interest in how this case

18  resolves itself, only in the procedure by which it is done.

19          As I told you before, it is for you, and you alone,

20  to determine the facts of the case and the credibility of each

21  witness.  If your recollection of the testimony varies with any

22  statements that are inadvertently made by me or counsel for any

23  party in reviewing the testimony, you have to be guided by your

24  own memory and your recollection of the testimony.  You

25  determine the facts from all of the testimony that you have

46

1  heard, and the other evidence which has been received during

2  the trial.  Neither I nor anyone else may infringe on your

3  responsibility as the sole judges of the facts.  On the other

4  hand, and of equal importance, you must accept the rules of law

5   as I have given them to you and apply those rules to the facts

6   of this case.

7          I'm now going to instruct you on your deliberations,

8   that is what you are to do when you retire to the jury room.

9   First, the attitude and conduct of the jury at the outset of

10  the deliberations are matters of considerable importance.  When

11  you retire to the jury room for your deliberations, they should

12  proceed in an orderly fashion.  The first order of business in

13  the jury room will be to select one of you to act as the

14  foreperson.  You are free to select any one of you to act in

15  that capacity.  The foreperson will preside over your

16  deliberations and will speak for you here in court should that

17  become necessary.  One more thing about the foreperson.  The

18  fact that somebody is a foreperson does not mean that he or

19  she, that his or her vote is entitled to any greater weight

20  than the vote of any other juror.

21          In the course of your deliberations, if you should

22  find yourself in doubt concerning any part of my instructions

23  to you about the law, if you need clarification, you may

24  request further instructions.  In that event, you should

25  transmit a note, signed by the foreperson to me through my

47

1  courtroom deputy.  Nobody should try to communicate with the

2  court by means other than a signed writing.  I will not

3  communicate with any juror on any subject relating to the

4  merits of the case except in writing or orally here in court

5  with all counsel present.

6      You should not at any time reveal, even to me, how

7  you stand numerically until you have reached a verdict.  Your

8  responsibility to reach a fair conclusion from the evidence and

9  the applicable law is an important one.  Your verdict should be

10  reached only after careful and thorough deliberations during

11  which you should consult with each other and discuss the

12  evidence and the reasonable inferences to be drawn from the

13  evidence freely and fairly in a sincere effort to arrive at a

14  just verdict.

15      It is your duty to consider the evidence with a view

16  towards reaching agreement on a verdict if you can do so

17  without violating your individual judgment and conscience.  You

18  must decide this case for yourself, examining the issues in

19  evidence with candor and frankness, and with proper deference

20  to and with regard to the opinions of each other.  Mature

21  consideration requires that you be willing to re-examine your

22  own views and to change your opinions if you are convinced that

23  your opinions lack merit or validity.  On the other hand, while

24  you may maintain this flexibility, no juror is required to

25  surrender his or her honest conviction as to the weight or


48


1  effect of the evidence because another juror's opinion differs

2  from his or hers, or for the mere purpose of returning a

3  verdict.

4       The verdict must represent the considered judgment

5  of each juror.  In order to return a verdict, it is necessary

6  that each juror agree thereto.  Your verdict therefore must be

7  unanimous.

8       Keep in mind that the dispute between the parties in

9  this case is for them a most serious matter.  They and the

10  court rely on you to give full and conscientious deliberation

11  and consideration to the issues and evidence before you.  You

12  should not allow sympathy or prejudice to influence your

13  deliberations.  You should not be influenced by anything other

14  than the law and the evidence in this case.  All of the parties

15  here stand equal before the court and each is entitled to the

16  same fair and impartial treatment at your hands.

17          Let me see counsel at side bar.

18          (On the record at side bar.)

19          THE COURT:  I would propose that, as long as there

20  is no objection, is to send copies of the charge out with the

21  jury.  And I would propose to insert in there the

22  circumstantial and direct evidence portion that was

23  unintentionally omitted.  That having been said, are there any

24  other objections to the charge as given?

25          MR. OLDS:  No.


                                49


1          MR. MARNEN:  No.

2          THE COURT:  No objections, all right.

3          (End of discussion at side bar.)

4          THE COURT:  Now, members of the jury, when you go

5  out to deliberate, in addition to receiving all of the exhibits

6  that have been admitted into evidence -- well, I should also

7  tell you that I'm going to send out with you a couple copies of

8   my written charge because I knew that would be the first thing

9   you asked for.  So I'm beating you to the punch.

10          I will also send out with you a document styled

11  Interrogatories to the Jury.  And this is essentially another

12  word for a verdict form.  And it is self-explanatory.  I just

13  want to make a quick point about it.  After it has been

14  completed, it is important, you will notice that there is a

15  line on the last page for the foreperson and all of the jurors.

16  Each juror, in addition to the foreperson, must sign the jury

17  form.  Although, a date line does not appear, please put a date

18  there as well.  And then where are all the exhibits, by the

19  way?

20          THE CLERK:  I have them all here.

21          THE COURT:  All right.  Counsel, you have reviewed

22  all of those with my Deputy Clerk and everybody is satisfied

23  with what's going out, is that right?

24          MR. OLDS:  Yes.

25          MR. MARNEN:  We agreed that one would not.


50


1           THE COURT:  Is that the matter we talked about

2  outside the presence of the jury?

3        MR. MARNEN:  Yes, sir.

4        THE COURT:  But aside from that, we're good to go on

5  the exhibits?

6        MR. OLDS:  Yes.

7        THE COURT:  All right, Nicole, raise your right

8  hand.

9        (Whereupon, the Deputy Clerk was sworn.)

10        THE COURT:  All right, we're in recess during jury

11  deliberations.

12        (Whereupon, at 12:10 p.m.; the Jury goes to the jury

13  room to begin their deliberations.)

14        (Proceedings reconvened at 12:30 p.m., in Judge's

15  Chambers.)

16        THE COURT:  The question from the jury is "Can we

17  see the time line of events that Mr. Olds displayed in the

18  courtroom?  We would like the poster board itself.  Foreperson

19  Kristina S. Cogan."  Is that the board you were writing on?

20        MS. RUSS:  He didn't actually write on it.  He

21  displayed it.

22        MR. OLDS:  It was displayed, the big poster board.

23  I think there was testimony about all the events on there.

24        THE COURT:  I presume, for the record, I'm talking

25  to you, Mr. Olds, it's your preference that the jury be


51


1  permitted to have it as a visual aid?

2        MR. OLDS:  Right.

3        MR. MARNEN:  I don't have any problem with it.

4        THE COURT:  I'm going to send it out to them with

5  this caveat.  It's being provided as an individual visual aid,

6  but at the end of the day it's their recollection that

7  controls.

8        MR. MARNEN:  I guess, if you don't mind, that it's

9  plaintiffs' version of things.

10        THE COURT:  I'll say this document was prepared by

11  plaintiffs' counsel.  After consultation with the lawyers,

12  we're going to permit you to have it in the jury room.  But

13  remember that it's your recollection ultimately that controls

14  as to the time line.

15        THE COURT:  Bring the jury into the box.

16        (Proceedings recessed at 1:34 p.m., in Judge's

17  Chambers; and reconvened at 1:35 p.m., in Courtroom C.)

18          THE COURT:  I received the following question from

19   you, members of the jury.  "Can we see the time line of events

20   that Mr. Olds displayed in the courtroom?  We would like the

21   poster board itself."  Signed the foreperson, Kristina S.

22   Cogan.  I presume it's the poster board right in front?

23          THE FOREPERSON:  Yes, sir.

24          THE COURT:  The answer to that question is yes, you

25   may have it, after consultation with both counsel, no one has

52

1   an objection.  Let me remind you that the poster board itself,

2   of course, was prepared by Mr. Olds.  With respect to the time

3   line as an issue of fact, it's your recollection that controls.

4   But it can go out with you as a visual aid.

5          (Whereupon, at 1:37 p.m., the Jury reconvened its

6   deliberations.)

7          (Whereupon, at 3:00 p.m., the Jury returns to

8   Courtroom C with their verdict.)

9          THE COURT:  Members of the jury, I'm informed you've

10   reached a verdict, is that correct?

11          THE FOREPERSON:  Yes.

12          THE COURT:  Would you please retrieve the verdict

13   form from the foreperson.  The verdict form is in order, you

14   can publish it.

15          THE CLERK:  Interrogatories to the Jury.  In the

16   United States District Court, For the Western District of

17   Pennsylvania.  Richard P., et al., v. School District of the

18   City of Erie, et al.  Civil Action No. 03-390 Erie.

19          Do you find that defendant Erie School District had

20   actual knowledge of the harassment of plaintiff R.P. by other

21   students after the December 19, 2001 rapes?

22          Answer:  No.

23          Do you find that defendant Erie School District had

24   actual knowledge of the harassment of plaintiff K.L. by other

25   students after the December 19, 2001 rapes?


53


1           Answer:  No.

2           Do you find that defendant Linda Cappabianca made a

3    defamatory communication to Robin J. and T.N. that related to

4    plaintiff R.P.?

5           Answer:  No.

6          Signed by all eight members of the jury and dated

7  January 30, 2006.

8          THE COURT:  Mr. Olds, do you want the jury to be

9  polled?

10         MR. OLDS:  Yes, your Honor.

11         THE COURT:  Poll the jury, please.  I'll do it.

12  We're going to start with you, juror number one.  Is the

13  verdict as read your verdict?

14         JUROR NO. 1:  Yes, it is.

15         THE COURT:  Juror number two, is the verdict as read

16  your verdict?

17         JUROR NO. 2:  Yes, it is.

18         THE COURT:  Juror number three, is the verdict as

19  read your verdict?

20         JUROR NO. 3:  Yes, it is.

21         THE COURT:  Juror number four, is the verdict as

22  read your verdict?

23         JUROR NO. 4:  Yes, it is.

24         THE COURT:  Juror number five, is the verdict as

25  read your verdict?

1          JUROR NO. 5:  Yes.

2          THE COURT:  Juror number six, is the verdict as read

3  your verdict?

4          JUROR NO. 6:  Yes, it is.

5          THE COURT:  Junior number seven, is the verdict as

6  read your verdict?

7          JUROR NO. 7:  Yes.

8          THE COURT:  Juror number eight, is the verdict as

9  read your verdict?

10          JUROR NO. 8:  Yes, your Honor.

11          THE COURT:  Members of the jury, let me take this

12  opportunity to thank you for your attention throughout the

13  course of this trial, and for your punctuality in getting here.

14  I know some people had to come from a little farther distance

15  than others, it is greatly appreciated.  There are a lot of

16  people that you've probably seen working here in the

17  courthouse.  When you come in the front door, you see some

18  court security personnel, there's some federal Marshals here.

19  There's court personnel, there's law clerks.  There's court

20  reporters, and a few judges, too.  The fact of the matter is

21  nobody is more important than the juries that come in and out

22  of here.  Because without juries, to the state the obvious, we

23  would not be able to proceed with our jury trials.  And the

24  whole system would come to a grinding halt.  Your service as

25  jurors then during this term is now complete.  I'm going to be


                                55


1  off the bench presently, so if you would wait just briefly in

2  the jury room, I will chat with you for a few minutes before

3  you get on your way.  But you leave with my thanks.  The

4  verdict having been returned, these proceedings are now over.

5

6          (Whereupon, at 3:05 p.m., the Jury Trial proceedings

7  were concluded.)

8

9                       - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

56

1              C E R T I F I C A T E
              _ _ _ _ _ _ _ _ _ _

2

3

4

5      I, Ronald J. Bench, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9

10

11    _____

12    Ronald J. Bench

13

14

15

16

17

18

19

20

21

22

23

24

25