IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RICHARD P., by and for R.P.,
and DENISE L., by and for K.L.,
        Plaintiffs


        v.                CIVIL ACTION NO. 03-390 ERIE


SCHOOL DISTRICT OF THE CITY OF
ERIE, PENNSYLVANIA, et al.,
        Defendants



        PRETRIAL CONFERENCE



        Proceedings held before the HONORABLE

        SEAN J. McLAUGHLIN, U.S. District Judge,

        in Judge's Chambers, U.S. Courthouse, Erie,

        Pennsylvania, on Thursday, December 1, 2005.




APPEARANCES:
        EDWARD A. OLDS, Esquire, and CAROLYN
        SPICER RUSS, Esquire, appearing on behalf
        of the Plaintiffs.

JAMES T. MARNEN, Esquire, appearing on behalf
of the Defendants.




Ronald J. Bench, RMR - Official Court Reporter




2


1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 12:56 p.m., on

4    Thursday, December 1, 2005, in Judge's Chambers.)

5

6          THE COURT:  Let's go on the record.  This is the

7    time we set for pretrial at Civil Action 03-390 Erie.  I had a

8    note to myself here about your narrative statement.  In any

9    event, just as a housekeeping matter, the original plaintiffs'

10   pretrial narrative statement had been marked sealed.  It should

11   not have been.  It was a mistake by the Clerk's Office

12   downstairs.  I am unsealing that.  It couldn't have been sealed

13   anyways without my order.  Henceforth, it's unsealed.  Now, the

14  case is scheduled for jury selection and trial on January 23rd.

15  Let me flip to your witnesses and exhibits.  First of all, with

16  respect to the list of exhibits, I imagine some of these are

17  duplicative of what will be introduced by the defendant.  Have

18  you had a chance to at least skim through these and familiarize

19  yourself with what they are?

20      MR. MARNEN:  Yes, I'm familiar with all of them.

21      THE COURT:  Any problems, objections, anything

22  that's going to generate a motion in limine on any of this,

23  without holding you to this for all time.  I'm just trying to

24  get a sense if there's any real problem?

25      MR. MARNEN:  In the narrative I had identified some

3

1  issues, I don't think it had anything to do with the records.

2      THE COURT:  Needless to say, we're not going to have

3  an issue on authenticity or anything like that?

4      MR. OLDS:  No.

5      MR. MARNEN:  I don't think so.  There may be a

6  couple, I raised some issues, legal issues in my original

7  pretrial narrative that may bear on it.  For the most part, I

8    don't think there's any problem at all with exhibits.  And I

9    have them all.  And I think they have mine.

10           THE COURT:  I presume you have his?

11           MR. OLDS:  Correct.

12           THE COURT:  You have a pretty heavy list of

13    witnesses here, could I reasonably anticipate that perhaps not

14    all of these people will be called?

15           MR. OLDS:  Correct.

16           THE COURT:  Can you give me some rough idea?

17           MR. OLDS:  Approximately, 12 witnesses is what we

18    were looking at.  Our experts, obviously.  The two plaintiffs

19    and their parents.  We're going to call probably several other

20    of the students.  We're going to call the mother to whom the

21    defamatory statements were made.  And probably a couple of the

22    police officers.

23           THE COURT:  Who investigated the assaults?

24           MR. OLDS:  That's correct.  And then probably

25    Cappabianca and Woods.  Given your most recent ruling, we

4

1    probably, we haven't made a final decision, it might not be

2  necessary for us to call all those other school district

3  officials --

4        THE COURT:  That are relevant on the IDEA claim

5  initially?

6        MR. OLDS:  Right.

7        THE COURT:  So you may be down to eight or nine

8  witnesses, something like that?

9        MR. OLDS:  Right.  There's 13 listed, could shake

10  out to 10 or so.  But a number of them would not be lengthy

11  witnesses, they would be short witnesses.

12        THE COURT:  As long as we're on the subject of

13  witnesses, let me flip to the defendants' narrative statement

14  here.  You have about 30 people listed?

15        MR. MARNEN:  There's a lot of duplication, your

16  Honor.

17        THE COURT:  Presuming that two or three maybe of

18  your key people will be called as on cross, who do you think,

19  just by way of paring this down to the people most certainly

20  who are going to be called that are not duplicative?

21        MR. MARNEN:  Robert Blakely, who's the head of

22  Juvenile Probation at the courthouse.  That's mainly, it's not

23  just records, but to get information that's in the records over

24  there.  That relates to assailants and what happened to them.

25  Dennis Borczon, that's number five, he is a psychiatrist who

5

1  treated K.L., when she was in, I'm sorry -- Millcreek Community

2  Hospital in early January.  Tina Christiansen, might be called,

3  I'm not sure.  She is the head of the SAP program --

4        THE COURT:  What does that mean?

5        MR. MARNEN:  Student assistant program, that's a

6  program that provides emotional and academic support to kids

7  who have problems.  And one of the girls here, R.P., was in the

8  SAP program at Strong Vincent.  Robert Iddings, who is the

9  supervisor at Sarah Reed.  I know the plaintiffs are still

10  taking the position and the court is allowing them to take this

11  position, I have no argument with it, that the treatment, that

12  the admissibility of, I have no argument with it, that Sarah

13  Reed acerbated the conditions of the girls.  Iddings is the

14  supervisor there.  James Perfetto, he's an outside possibility.

15  He's the head of security in the Erie School District.

16        THE COURT:  Was he involved in this particular case,

17  in this investigation?

18          MR. MARNEN:  A little tiny bit.  I don't think I'm

19   going to call him, but there's a chance.

20          THE COURT:  It's not really a custom or practice

21   case?

22          MR. MARNEN:  No.  I doubt that I will.  I'm

23   suffering from memory lapse right now.  Christine Ruhl, who was

24   the mental health counselor at Strong Vincent.  I don't

25   think -- we aren't getting into the propriety of the placement

6

1   right?

2          THE COURT:  Not from a motivational standpoint.

3          MR. MARNEN:  I don't think I need to get into --

4   maybe Frank Scoozie.  He is the assistant to the

5   superintendent, he had at that time some special education

6   involvement, too.  And maybe Mary Ann Tempestini, who is the

7   person in charge of records at, in fact, I think I will have to

8   call her.  She's in charge of records at the Erie School

9   District.  The plaintiffs made issues, that I would make issues

10   out of, too, about records and I need to have her explain the

11   situation.  Other than that, and probably a couple of treating

12  people besides Dr. Borczon, and I've identified those people in

13  my supplemental pretrial narrative.

14      THE COURT:  All right.  This case is going to be

15  shorter than I originally anticipated.  Just roughly, for

16  purposes of our scheduling, how long is your case in chief as

17  you presently anticipate is it going to be?

18      MR. OLDS:  Five days, perhaps six.

19      THE COURT:  Just on the plaintiffs' case?

20      MR. OLDS:  Yes.

21      THE COURT:  And a couple days on the defense?

22      MR. MARNEN:   Three or four, I think.

23      THE COURT:  All right.  Then that pretty much, we

24  originally had it booked for, before the rulings -- we were

25  going to block off two trial weeks -- in other words, two


7


1  five-day trial periods.  And then maybe one or two days into

2  the next week just to be safe.  On page 11 of your narrative

3  statement, you have legal issues?

4      MR. MARNEN:  Yes.  Let's just take a minute and go

5  through some and on the subject of motions in limine, what has

6  to get briefed up, I don't know what I can handle here and what

7  is going to require some additional study.  Let's just take

8  them seriatim.  The first one is "whether the Pennsylvania

9  Child Protective Services Law requires school administrators to

10  report sexual activity between students to any child protective

11  services agency or police agency."  Before I try to chase that

12  down, I guess the threshold question is whether it's the

13  intention of the plaintiffs to introduce a failure to do that

14  as some evidence of deliberate indifference?

15        MR. OLDS:  We would touch on that.  But there is an

16  obligation to report.  That they had knowledge and there was

17  not a report filed.  I guess that could very well be an issue.

18        THE COURT:  Your position is?

19        MR. MARNEN:  No obligation.

20        THE COURT:  No obligation to report student on

21  student harassment -- only teacher on student?

22        MR. MARNEN:  No, under that particular statute it's

23  my recollection, my interpretation of the statute, that the

24  obligation is to report neglect or abuse that is taking place

25  in the home of a student.  Had nothing to do with what's going

1    on in the school.

2        THE COURT:  That will be the subject of a motion in

3    limine and brief in opposition.  You already have my time

4    periods for the motions in limine?

5        MR. MARNEN:  Yes, sir.

6        THE COURT:  What about the second one here, "whether

7    B.C. and C.B. were subject to disciplinary action by Erie

8    School District with respect to their participation in the

9    sexual assaults of December 19, 2001, since the assaults did

10   not occur on property owned by the Erie School District, at any

11   ESD sponsored activity, or on any public conveyance providing

12   transportation to an ESD school or an ESD sponsored activity,

13   and B.C. and C.B. were not going to or returning from school at

14   the time of the assaults."  I think I understand that.  You

15   would be asking for a judicial declaration that the students

16   were not subject to school district discipline because none of

17   the behavior occurred on school property, essentially?

18       MR. MARNEN:  In other circumstances, right.  I think

19   the plaintiffs have and will assert that's part of this

20   indifference.

21          MR. OLDS:  Right.  As is evidence of deliberate

22  indifference.  I think the issue there might have to be

23  briefed, also.  The issue is really they were actually -- it's

24  more of a factual question than a legal question.  I would

25  agree with you legally that it has --


9


1          THE COURT:  Bear with me a second.  I thought it is

2  beyond dispute that the sexual assaults occurred off property?

3          MR. OLDS:  It occurred off property.  There are two

4  facts that pertain to that.  One, it occurred off property when

5  the kids were leaving school.  So they were on their way home

6  from PASS.  So it was school related.  Two, there was testimony

7  from at least one of -- actually, the kids who was there, this

8  Fleming guy, that the assault was planned on school.  That the

9  kids --

10          THE COURT:  I'll shake all that out in the brief.

11  That's number two that we're going to have to take a look at.

12  Number three is really just a related --

13          MR. MARNEN:  The same issue, your Honor, except

14  A.K.'s factual circumstances I think were a little bit

15   different.

16          THE COURT:  Then, four, "whether school

17   administrators have a duty to report sexual activity between

18   students that is not subject to disciplinary action by a school

19   district to any third party, including the parents of the

20   students?"

21          MR. OLDS:  That's almost, that would be like a

22   charge, whether that would be part of the charge or not.

23          THE COURT:  Is it your position, I presume it's your

24   position that there was a legal duty to report -- I don't want

25   to put words in your mouth?


                              10


1           MR. OLDS:  I'm not saying -- I don't think we're

2    saying there's a legal duty.

3           THE COURT:  This is really a duty to investigate

4    case, isn't it primarily?

5           MR. OLDS:  Yes.  Or if I guess Linda Cappabianca

6    testified either she or Woods testified that while, well, if we

7    found out that 12-year-olds were engaging in sexual activity,

8    they would as a matter of course inform the parents.  In this

9   case they found out and did not.  But, again, I don't know that

10   I would -- I'd want to look at it.  I'm not saying there is a

11   legal duty in the sense that there is a common law duty or a

12   statutory duty for school district officials --

13          MR. MARNEN:  I'm not sure, I thought they were going

14   to assert that, but I raised every issue I can think of.

15          THE COURT:  As a practical matter, I think the

16   anticipated response of the school district it would be that if

17   we had known about it, we would have told the parents.

18          MR. MARNEN:  Linda Cappabianca, in fact, testified

19   when one aspect of this, December 20, 2001, she acquired

20   information indicating there was some sexual activity between

21   K.L. and C.B.  C.B. is one of the assailants.  There's a

22   factual dispute as to what she knew and did not know.  But she

23   said it was, would have been her custom at that time to report

24   that, consensual or not, to the parents.  But she had no

25   recollection as to whether she did.


11


1          THE COURT:  All right.  Five.  Let me just read

2   this.  I'm a little unclear on five?

3        MR. MARNEN:  I am, too, your Honor.

4        THE COURT:  What is the date of the first assault?

5        MR. MARNEN:  December 19, 2001.

6        THE COURT:  Okay.  I don't think I'd be inclined to

7   grant that.  Because we're dealing with minors here and whether

8   the assaultive behavior was allegedly welcomed or not, in my

9   opinion, is of no moment.  Unless I'm missing your point?

10       MR. OLDS:  They're both 12, they were under 14 at

11   the time.

12       THE COURT:  In other words, these children on the

13   criminal side were incapable of consenting and in making it a

14   non crime.  But I might not be reading the request accurately.

15       MR. MARNEN:  Your Honor, I quite frankly can't

16   remember my point here.

17       THE COURT:  All right, let's go on to six.

18       MR. MARNEN:  This is what you raised a couple

19   minutes ago.  I don't think they have a duty to exercise

20   reasonable care to conduct an investigation, I think Title IX

21   is about deliberate indifference, not exercising reasonable

22   care.

23       THE COURT:  It's not, it's not a negligence

24   standard.  If anything they would have a duty to not be

25  deliberately indifferent, in the manner or method of their

12

1  investigation?

2      MR. OLDS:  Right.

3      THE COURT:  Seven.  "Whether evidence of a failure

4  to discipline the assailants on and after January 9, 2002 for

5  the sexual assaults of December 19, 2001, is admissible in

6  evidence in the absence of evidence that any such failure

7  caused plaintiffs to undergo sexual harassment or made them

8  more vulnerable to sexual harassment?"

9      MR. MARNEN:  In other words, deliberate indifference

10  by the school district is irrelevant unless it causes

11  harassment, harm.

12      THE COURT:  Some kind of harm?

13      MR. MARNEN:  It could not have here.  I think

14  everybody agrees that neither girl was in school after the

15  10th.

16      MR. OLDS:  I think that kind of activity shows it

17  could be weighed by the jury whether they were deliberately

18  indifferent or not.  Because if they would, I mean, absence of

19  punishment is evidence that they didn't care, they were

20  indifferent due to the fact that the girls were sexually

21  harassed.

22      THE COURT:  Without deciding the point, why doesn't

23  the failure to discipline, at least arguably circumstantially

24  go to their mens rea, from which a jury could conclude what

25  their mental state had been during the period of time when

13

1  their actions could have prevented harm?

2      MR. MARNEN:  It might, your Honor.  Your Honor, I

3  have to think that through some more.

4      THE COURT:  If you want to file it, go ahead.

5  That's my tentative thinking.  Number eight?

6      MR. MARNEN:  I this think conceptually is the same

7  issue as seven.

8      THE COURT:  Yes.  And then nine.  I think nine is

9  now moot, isn't it, by virtue of my previous rulings?

10      MR. MARNEN:  Yes, it is.

11      THE COURT:  Let's see, hang on.

12      MR. MARNEN:  That claim is no longer in the case.

13   You're allowing them to talk about the effect at Sarah Reed?

14        THE COURT:  As a damage aspect.  So much for that.

15   You want to get those other motions in limine, get them in and

16   then the responses within the timeframes set forth in my

17   pretrial order.  So much for the legal issues, anything else

18   you need to raise?

19        MR. OLDS:  No, I don't think so.

20        THE COURT:  The plaintiffs now are they adults, I've

21   lost track?

22        MR. OLDS:  They're 17.

23        THE COURT:  Okay.  And they will both testify is

24   that correct?

25        MR. OLDS:  That's correct.


                              14


1         THE COURT:  The assailants aren't listed?

2         MR. OLDS:  They are.  Although, the purpose --

3         THE COURT:  Are you calling them?

4         MR. OLDS:  I might call them.  The purpose of

5    calling them would be to go to the knowledge of the defendants.

6    That would be as opposed --

7          THE COURT:  Assaultive behavior is now conclusive

8  that's not -- in other words, it would be your intention to put

9  people up on the stand to testify to what they did to the

10  children?

11          MR. OLDS:  That's correct, it would be

12  communications with the school district.

13          THE COURT:  Are any of them presently incarcerated?

14          MR. OLDS:  Bibbs was when we took his deposition.

15  And he's the one that we would call.  So I don't know if he'll

16  need a Habeas Corpus, a subpoena duces tecum for him.  When he

17  was deposed, he was incarcerated.

18          MR. MARNEN:  We could use the video deposition.

19          MR. OLDS:  We would be willing to just do some

20  deposition excerpts from him, as opposed to calling him.

21          MR. MARNEN:  Or we could just read the deposition.

22          MR. OLDS:  I think we can work that out.

23          MR. MARNEN:  I don't have any problem with that.

24  May I talk for a moment, your Honor.  This matter of the

25  minors, not mentioning their names and all that.  I'm a little

15

1  bit baffled, I confess, on how we're going to try this case

2  using initials.

3      THE COURT:  I don't see any other practical way, it

4  can't be done.  Up to a point, the way the pleadings were

5  styled with the abbreviations and just the letters, that is

6  understandable and fine.  The reality is when it gets to trial,

7  the jury is never going to be able to follow it unless names

8  are put on it.

9      MR. MARNEN:  We can probably live with first names.

10     MR. OLDS:  Probably.

11     MR. MARNEN:  No one has the same first name.

12     MR. OLDS:  Right.

13     MS. RUSS:  We originally filed the complaint

14  actually using first names, we switched to initials because of

15  the new rule.

16     THE COURT:  All right, let's go off the record.

17     (Discussion held off the record.)

18     THE COURT:  Back on the record.  I may have said

19  this before.  On January 23rd, I would want you here at 8:30.

20  And I would want on the Friday before your suggested points for

21  charge, as well as any additional voir dire beyond what I

22  already court ordered, the traditional.  And I'll take up the

23  voir dire, as I always do, right on the morning of the trial.

24  Are you going to be trying the case by yourself?

25        MR. MARNEN:  Yes.


                              16


1        THE COURT:  Is there going to be a division of labor

2  on your side?

3        MR. OLDS:  We haven't actually decided that.

4        THE COURT:  It doesn't make any difference to me,

5  you can break it up any way you want.  My only rule is one

6  lawyer per witness; in other words, you start a witness, you

7  finish the witness, and make all the objections concerning that

8  witness.  Now, let's go off the record.

9        (Discussion held off the record.)

10

11              - - -

12

13        (Whereupon, at 1:36 p.m., the proceedings were

14  concluded.)

15

16                   - - -

17

18

19

20

21

22

23

24

25



                                    17


1              C E R T I F I C A T E

2

3

4

5     I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11

12 _____

13 Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25